IRWIN, ADMINISTRATRIX, *v.* JONES.

[No. 7,585. Filed November 3, 1910. Rehearing denied December 14, 1910.]

1. CONTRACTS.—*Care and Support.—Members of Family.*—Answers. to interrogatories showing that the claimant and his wife lived with, and cared for, decedent, that decedent said nothing indicating a contract to pay for services, and that claimant was induced to render the services because decedent had taken claimant when he was an orphan and cared for him, and that an implied contract was inferred from claimant's "faithfulness," do not sustain a verdict for claimant, no contract, express or implied, being shown.  pp. 590, 592.

2. CONTRACTS.—*Family Relations.—Parent and Child.*—Where one is taken into the home of another and treated as an own child, there is ordinarily no implied obligation to pay for board and lodging, or to receive anything for services rendered.  p. 592.

3. CONTRACTS.—*Implied.—Equity.*—A contract is never implied where it would be inequitable.  p. 592.

4. CONTRACTS.— *Work and Labor.— Member of Family.— What Constitutes.*—Where claimant lived with decedent from boyhood as a member of the family, never receiving either pay, or promise thereof, for services, the fact that decedent lived "in his rooms," would not break the family relationship, where, otherwise, they lived as one family.  p. 593.

5. CONTRACTS.—*Express.—Interrogatories.—Negativing.*—Where a claim alleges that services were performed at decedent's special request, an answer to·an interrogatory showing that there was no express contract, negatives any contract either by words or inferred from circumstances.  p. 593.

From Gibson Circuit Court; *O. M. Welborn,* Judge.

Action by William C. Jones against Isabella Irwin, as administratrix of the estate of Henry Hawkins, deceased. From a judgment for plaintiff, defendant appeals. *Reversed.*

*John W. Brady, James Bingham,· Lucius C. Embree* and *Morton C. Embree,* for appellant.

*Reuben T. Walters* and *Thomas Duncan,* for appellee.

COMSTOCK, C. J.—The issues tried in this cause were upon a claim filed by appellee against the estate of appellant's decedent.

The claim is in three paragraphs. The first, in substance, alleges that appellant's decedent, Henry Hawkins, died on July 9, 1909, aged ninety-five years, unmarried and without issue; that the claimant is thirty-eight, and his wife, Alice, thirty years old; that they were married in December, 1890; that from the age of four years until his marriage claimant made his home with decedent, and decedent was as much attached to him as though he had been his own child; that claimant and his wife, shortly after their marriage, at decedent's request moved to his home, to board, care for and nurse him; that claimant, assisted by his wife, entered upon the performance of said contract, and did board, care for, nurse and watch over decedent up to January 23, for a period of fifteen years and seven months; that the services were of the value of $1 a day for the first ten years, and of the value of $3 a day for the remainder of the time, and of the total value of $9,300; that said amount was due and unpaid; that the services of the wife were rendered for and on behalf of her said husband.

The second paragraph is upon ˙an open account for moneys paid at the request of decedent to divers persons and in divers sums, in all the sum of $359.92.

The third paragraph is in the form of an open account in the following terms:

(1)  To eleven years and two months caring for, nursing, boarding and waiting on Henry Hawkins from December 1, 1890, to February 1, 1902, at $1 per day............... $4,045

(2)  To caring for, boarding, waiting on and nursing Henry Hawkins from February 1, 1902, to February 1, 1908, six years at $3 per day ................................. 6,500

Total                                    $10,545

Appellant answered by general denial, and by way of set-off for money paid by decedent as surety of the claimant. Appellee replied in two paragraphs; (1) A general denial, and (2) payment.

A trial by jury resulted in a verdict and judgment in favor of. claimant for $1,500. With the verdict the jury returned answers to interrogatories.

Appellant asks for reversal, among other grounds,

1.  upon the overruling of her motion for judgment upon the answers to interrogatories notwithstanding the general verdict.

The answers to interrogatories show that before appellee was seven years old he became an orphan, and was soon after taken by decedent, Henry Hawkins, into his home, and there cared for and maintained until the time of his marriage, substantially as a parent cares for and rears his own child. At the time of his marriage appellee was residing in the home of decedent, but did not return there with his wife immediately upon his marriage. Afterwards he returned, and from that time until early in the year 1908 continued with his family to reside in the home of decedent.

Said claimant and his wife and children and said Hawkins slept in the same house, ate their meals together, and the bed of said Hawkins and the beds of said Jones and family were cared for by the same person, in the same way. The meals were prepared and served for all of them by the same person. Their clothes were washed and ironed at the same time and by the same person, but Hawkins lived "in his rooms." Appellee did not keep any account of either the boarding of said Hawkins or of any service rendered to him, in person, in the way of nursing and attendance in sickness. When he was not sick he took care of himself. During the period of six years previous to July 21, 1909, he was so sick as to require nursing at six different times, amounting in all to twenty-four weeks. Jones, his wife and children left the house of Hawkins about January, 1908. None of the services mentioned in the claim were rendered to said Hawkins after the wife and children left. Between July 21, 1903, and January, 1908, Jones and his wife rendered services to said decedent in the way of boarding, washing and nursing for a period of twenty-four weeks, which services were worth $14 a week. Appellee is now a nonresident of the State of Indiana, is insolvent, and has no property or "money in sight." There was no express contract between appellee and decedent whereby decedent agreed to pay appellee for any of the services mentioned in the claim. After the marriage of said appellee, and while he and his wife and children were residing in the home of decedent, said decedent became the surety of said Jones on a number of promissory notes, aggregating a large sum of money. As said surety he paid $640 and his estate is liable for $640 unpaid debts, upon which he became surety during his lifetime. The services mentioned in the claim were rendered pursuant to an implied contract, whereby said decedent was required to pay for them, and the facts and circumstances proved by the evidence from

which such contract arose was their "faithfulness." De-
cedent made no statement to appellee, whereby appellee was
induced to render the servics mentioned in the claim, or any
of them; nor were such statements made to others and com-
municated to him.   Appellee was induced to render the ser-
vices mentioned in the claim by the fact that decedent
"cared for him in youth, when he had no home."

"Where one is taken into the family of another, and
treated as a member of the household, there is ordinarily no
implied obligation on the one hand to pay for board,
2.   care and shelter, or, on the other, for services ren-
dered."   McClure v. Lenz (1907), 40 Ind. App. 56,
and cases cited.   See, also Waechter v. Walters (1908), 41
Ind. App. 408; Shutts v. Franke (1908), 42 Ind. App. 275.

A promise is implied only upon principles of equity and
natural justice, and no implication to pay arises where the
circumstances are such that the implication will be
3.   inequitable.   3 Select Essays, Anglo-American Leg.
Hist. 286, 292, 295; Toussaint v. Martinnant (1787),
2 T. R. 100, 105; Exall v. Partridge (1799), 8 T. R. 310.

While the jury finds that there was no express
1.   contract, it also finds that the services were rendered
pursuant to an implied contract, such implication
"arising from their faithfulness."

The act which the jury finds induced appellee to render
the services in question was that in his youth, when he had
no home, decedent "cared for him."   Such inducement pre-
sumably arose from a sense of gratitude to a benefactor.
The fact that decedent paid out, as surety for appellee,
while he and his wife were living with decedent, the sum
of $640, is further evidence of the continued good-will of
decedent for claimants, but not of a contract.

The original inducing cause for the services—food, shel-
ter and care to a homeless orphan—was payment in advance
for the services rendered.   Mere faithfulness on the part

of appellee, while living in the home of decedent, and while they were living together as members of one family—appellee for many years occupying the relation of foster-son —would not raise an implication of a promise on the part of decedent to pay for such services.

The jury found that decedent and appellee's family were not living together as members of a family. This statement is based upon the fact found, that decedent lived in 4. his rooms. Apart from his occupying his rooms, the manner of living of the parties was that of a single family. Appellee took the place of a son in the household of the childless old man. One roof sheltered them. They ate at one table. Their common wants were supplied from the same source and the domestic and household offices were performed for all by the same person. From the facts found, we may say, as a matter of law, that they lived as one family.

It is found, too, that in all the years of the association appellee kept no account of the board of said decedent or of any services rendered to him in person in the way of nursing and attendance in sickness. This is not conclusive, but is significant as indicating that he was expecting no compensation.

Each paragraph alleges that the claim was founded upon the special request of decedent. The jury might have found that there was an express contract from evi- 5. dence sufficient to justify such finding; but when the existence of such a contract is negatived such finding operates against a contract either proved by words or circumstances. The finding is therefore inconsistent with the verdict. It is doubly inconsistent, for the reason that the circumstances from which the jury implies an agreement will not warrant such an implication. Appellant's motion should have been sustained. *Croxton* v. *Foreman* (1895), 13 Ind. App. 422.

Judgment reversed, with instructions to sustain appellant's motion for judgment on the answers to interrogatories, and to render judgment thereon in favor of appellant.