## WESTERN OIL REFINING COMPANY v. UNDERWOOD.

[No. 12,060.   Filed October 13, 1925.]

1. CONTRACTS.—*"Implied contract" defined; difference between implied and express contract.*—An implied contract is an agreement arrived at from the acts and conduct of the parties, viewed in the light of the surrounding circumstances, and not from their words, either spoken or written; it differs from an excess contract only in the mode of proof.   p. 491.

2. WORK AND LABOR.—*Elements necessary to recovery on implied contract for services.*—To entitle one to recover on an implied contract for services, there must have been either a request that they be performed or assent to receiving their

benefit, under circumstances negativing any presumption that they were gratuitous. p. 491.

3. WORK AND LABOR.—*Implied contract to pay for services in taking telephone calls and orders held not established.*—Where one employed to sell oil and gasoline in the vicinity of his home had his telephone listed in the name of his-employer, who paid the tolls, but it continued to be used by the employee's household, a member thereof who answered telephone calls in the employer's business for a period of seven years without demanding any pay could not recover on an implied contract for such services. p. 491.

From Owen Circuit Court; *Jess B. Fields,* Judge.

Action by Mattie Underwood against the Western Oil Refining Company. From a judgment for plaintiff, the defendant appeals. *Reversed.* By the court in banc.

*Charles O. Roemler, Isaac Carter, Harry F. Rust* and *Miller & Blain,* for appellant.

*H. A. Lee* and *Miers & Corr,* for appellee.

REMY, C. J.—In September, 1914, William G. Underwood was employed by appellant as manager of its oil station located in the city of Bloomington, and continued in such employment for more than seven years. Under his contract, it was the duty of Underwood to sell and deliver oil and gasoline in, and in the vicinity of, Bloomington, which was his place of residence. At the time he was employed, and at all times thereafter during the term of his employment, Underwood and his family resided in the same dwelling house with his parents and his sister, appellee herein, in which house was, at the time he took the employment, a telephone that was listed in the name of his father. Soon after Underwood commenced work under his contract of employment, the telephone was at his suggestion listed in the name of appellant, though the number and location of the instrument were not changed; after which all tolls for its use were paid by appellant, but, as formerly, the telephone

was in general use by all members of the household. The telephone was sometimes used by customers in placing orders, and by Underwood who, from various points on his routes, would call and make inquiry as to what orders had been placed in his absence. The calls were of daily occurrence, and for the most part were answered by appellee, who was at different times during her brother's employment paid small sums of money for services rendered in connection with the telephone, the money being paid by her brother from his own funds, no report thereof being made to appellant, though, under his contract of employment, he was required to and did make weekly reports of all expenses incurred by him on behalf of appellant. Underwood had no authority as agent of appellant to employ his sister or anyone else to answer telephone calls.

Underwood continued as appellant's superintendent at Bloomington until March, 1922, about which time, appellee commenced this action against appellant to recover the value of her services, which she alleges in her complaint were performed at appellant's instance and request, and were of the reasonable value of $15 per week. Prior to the commencement of this action, appellee at no time made any demand upon appellant that she be paid for services rendered by her. The only suggestion ever made by appellee to appellant as to any services performed by her was in a letter addressed to appellant a few days before this action was begun, in which letter, she stated that "ever since you have been in business in Bloomington, I have answered the telephone for your service," and "I think I should be paid for my service."

Appellant answered the complaint by denial and plea of payment. A reply in denial to plea of payment closed the issues. On a trial of the cause, the facts as above

stated were established by the evidence, and there was a verdict and judgment for $2,220.

In our view, the only question which it will be necessary to consider is the sufficiency of the evidence to sustain the verdict.

Appellee makes no contention that there was an express contract that she was to be paid for her services. Her contention is, and the trial court by its action in overruling the motion for a new trial held, that, under the facts which are not in dispute, she was entitled to recover on an implied contract the value of the services for which she claims compensation.

A true implied contract is an agreement of the parties arrived at from their acts and conduct viewed in 1, 2. the light of surrounding circumstances, and not from their words, either spoken or written. Like an express contract, it grows out of the intentions of the parties to the transaction, and there must be a meeting of minds. Such a contract differs from an express contract only in the mode of proof. *Columbus, etc., R. Co.* v. *Gaffney* (1901), 65 Ohio St. 104, 61 N. E. 152. See, also, *Hertzog* v. *Hertzog* (1857), 29 Pa. St. 465; *Miller* v. *Schloss* (1916), 218 N. Y. 400, 113 N. E. 337; *Irwin* v. *Jones* (1910), 46 Ind. App. 588, 92 N. E. 787. To entitle one to recover on an implied contract for services, "there must be evidence that defendant requested plaintiff to render the services, or assented to receiving their benefit under circumstances negativing any presumption that they were gratuitous." Abbott, Trial Evidence, (2d ed.) 442.

In the case at bar, it is not claimed by appellee that appellant requested her to render the services for which she seeks compensation; and there is no evidence 3. of probative value that the services were rendered by appellee with the expectation on her

part that they were to be paid for by appellant. On the contrary, the evidence tends to show that appellee expected pay, if any, from her brother, and that her claim against appellant was but an afterthought. If appellee had all along expected to be paid by appellant, why did she say nothing to appellant about it for more than seven years? Why in her letter then did she deem it necessary to inform appellant that she had rendered the services. Why did she then say "I *think* I should be paid?" When Underwood was made superintendent, he, with a proper conception of his duty to his employer, suggested that his residence telephone be listed in the name of appellant. He knew that such listing would, as it did, save him many a step in canvassing the district and otherwise taking care of the business. Appellant recognized the wisdom of the suggestion, and not only agreed to the plan, but generously paid the tolls, though the telephone continued in general use by all members of the employee's household. It is not contended by appellee that the payment of the tolls by appellant was proof of her alleged employment. It is inconceivable that, through the years of Underwood's employment, all telephone calls were answered by appellee. Many calls must have been answered by other members of the family. If appellee is entitled to recover from appellant, what is to prevent a recovery by each member of the household, the recovery in each instance to be in proportion to the services rendered?

Clearly, the evidence is insufficient to show an implied contract by which appellee was employed by appellant to perform the services for which compensation is sought by appellee in her complaint.

Reversed.