[No. 34272.   Department Two.   July 31, 1958.]

JOHN CAUGHLAN, *Respondent*, v. INTERNATIONAL LONGSHORE-
MEN'S AND WAREHOUSEMEN'S UNION, LOCAL NO.
37-C, *Appellant.*[1]

[1]Reported in 328 P. (2d) 707.

*Walthew, Warner & Keefe,* for appellant.

*Philip L. Burton,* for respondent.

DONWORTH, J.—This action was commenced by respondent, an attorney at law, to recover certain fees for legal services. His amended complaint alleged two causes of action: (1) for the balance due for services rendered appellant in connection with extensive litigation in which respondent represented Ernesto A. Mangaoang, appellant's then business agent; and (2) for the balance due for services rendered appellant on its own behalf.

The case was tried to a jury. At the conclusion of respondent's evidence, appellant challenged the sufficiency thereof to establish an issue of fact upon which the jury could pass. This motion being overruled by the trial court, appellant rested its case without introducing evidence in its own behalf.

The jury found in favor of respondent on both causes of action and returned a verdict in exact conformity with the amounts demanded in the amended complaint. This appeal is prosecuted from the judgment entered upon the verdict.

Appellant's second and third assignments of error respectively pertain to the reception of evidence and the giving of certain instructions upon the theory of *"quantum meruit."* (Literally translated, that term means "as much as he deserved." *Losli v. Foster,* 37 Wn. (2d) 220, 222 P. (2d) 824 (1950).) It is argued that, since the amended complaint is drafted in terminology alleging an *express* contract, it was error for the trial court to admit, over appellant's continued objection, evidence tending to prove an implied contract (*quantum meruit*) and to instruct the jury upon that theory.

For his first cause of action, respondent alleged, in part:

"From September 23, 1950 to October 1953 defendant became indebted to plaintiff in the sum of $7227.58 as the

*agreed* and reasonable fee for legal services rendered to defendant at the *special instance and request* of defendant on behalf of defendant's business agent, Ernesto A. Mangaoang, in certain legal proceedings before the United States Department of Justice, Immigration and Naturalization Service, and in the United States District Court, the United States Court of Appeals for the Ninth Circuit, and in the United States Supreme Court, and that of said sum due to plaintiff, defendant paid a total sum of $1992.45, leaving a balance due and owing as of November 3, 1953 of $5235.13, and that since November 3, 1953 plaintiff has received from defendant on account of said services the additional sum of $875.00, leaving a balance now due and owing of $4360.13, no part of which has been paid to plaintiff." (Italics ours.)

■ Appellant contends that respondent's use of the words above italicized characterizes this as an action upon an express contract. But no authority has been cited by appellant to support its assertion that the phrase "special instance and request" is limited in application solely to pleadings involving express contracts. There is ample authority to the contrary. *McKevitt v. Golden Age Breweries*, 14 Wn. (2d) 50, 126 P. (2d) 1077 (1942); *Christensen v. Johnson*, 90 Utah 273, 61 P. (2d) 597 (1936); *Hoyt v. Buder*, 318 Mo. 1155, 6 S. W. (2d) 947 (1928); *In re Happel-Bossi's Estate*, 133 Wis. 119, 113 N. W. 433 (1907); *Cusick v. Boyne*, 1 Cal. App. 643, 82 Pac. 985 (1905). See, also, 2 American Jurisprudence Pleading and Practice Forms Annotated, Attorneys at Law, § 2:1214.

■ Nor is respondent's use of the word "agreed" necessarily determinative of the form of this action. Respondent's averment that the sum of $7,227.58 was *"the agreed and reasonable fee"* must be considered in the conjunctive, as pleaded. The allegation that $7,227.58 was a "reasonable fee" would have no place in an action upon an express contract. *Hoyt v. Buder, supra.*

At most, the amended complaint was ambiguous. However, it is difficult for us to conceive how appellant could have been misled by it, particularly in view of the character of the services rendered, the period of time involved, and the odd amount of the fee alleged. A contract for a legal

fee in such a sum is not one which would reasonably be expected to be agreed upon under the circumstances stated in the amended complaint.

In its answer, appellant generally denied these allegations. It made no motion to make the complaint more definite and certain, or for a bill of particulars, or to compel an election between, or to separately state, respondent's causes of action. Rather, appellant simply waited until the time of trial, and then interposed its objections when evidence was offered thereunder.

"As a general rule, a pleading will be construed more favorably to the pleader where objection thereto is not made at the earliest opportunity, but is deferred until the trial or until after verdict or judgment." 71 C. J. S., Pleading, § 55.

As so construed, we think these allegations fairly state a cause of action on an implied contract. Therefore, the trial court did not err in admitting evidence of, and instructing the jury upon, that theory.

Appellant cites *Campbell v. Hollywood Race Ass'n*, 54 N. M. 260, 221 P. (2d) 558 (1950), as authority for its position that *quantum meruit* relief cannot be granted where the plaintiff has pleaded an express contract and evidence tending to prove an implied contract is received over the defendant's objection. But that rule is not applicable in the present case, because an implied contract is pleaded.

Appellant's first assignment of error is directed to the trial court's refusal to sustain appellant's challenge to the sufficiency of the evidence. In this connection, we must consider all the evidence (including that relating to implied contract, which we have hereinabove held to be properly admitted), and all inferences which may be reasonably drawn therefrom, in the light most favorable to respondent.

In *McKevitt v. Golden Age Breweries, supra*, an action to recover a proportionate share of reasonable attorney's fees from one of the three brewing concerns (which had been codefendants in the same litigation) on the theory of implied contract, we said:

"Respondents seek recovery on an implied contract, but it matters not whether the claimed agreement be considered as an express or implied contract, as the result will be the same. An implied contract differs not from an express contract except in the mode of proof. Both grow out of the intentions of the parties to the transaction, and there must be a meeting of the minds whether the contract be express or implied. *Troyer v. Fox*, 162 Wash. 537, 298 Pac. 733, 77 A. L. R. 1132.

" 'A true implied contract is an agreement of the parties arrived at from their acts and conduct viewed in the light of surrounding circumstances, and not from their words either spoken or written. Like an express contract, it grows out of the intentions of the parties to the transaction, and there must be a meeting of minds. Such a contract differs from an express contract only in the mode of proof.' *Western Oil Refining Co. v. Underwood*, 83 Ind. App. 488, 149 N. E. 85."

Appellant contends that respondent did not meet the burden of proving either "(1) That the contract was entered into by . . . [appellant], or (2) That . . . [appellant] ratified or adopted the obligation of Mr. Mangaoang's legal fees."

No useful purpose would be served in relating here all of respondent's evidence. It embraces approximately five hundred typewritten pages of testimony and thirty-eight documentary exhibits.

■ It is sufficient to state that, at the time of his incarceration by the Federal immigration authorities and his threatened deportation under the internal security act of 1950, Mr. Mangaoang was appellant's business agent, charged, by Art. VI, § 5, of appellant's constitution and by-laws, with the performance of duties carrying a high degree of responsibility. Among these, it is provided that "He shall be responsible in securing legal advice for the Union." It was to appellant's benefit that Mr. Mangaoang be released from custody as soon as possible, because the union was meanwhile unable to function, at least with respect to the duties performed by him incidental to his office of business agent of the union.

Respondent testified that he was advised by Mr. Mangao-

ang and another of appellant's officers that appellant had "gone on record that his [Mr. Mangaoang's] cause would be fully supported by the union." During the course of the deportation litigation, respondent had frequent conferences with union officers, and appeared, by invitation, at union meetings. At the request of a union officer, he prepared a paper explaining the significance of the Mangaoang case for the attention of appellant's members. Minutes of appellant's executive board meeting of November 3, 1950, concerning the Mangaoang case were read into the record, in part, as follows:

" 'The motion is that $500.00 be given on account to lawyers.

" 'Lagunilla [appellant's present secretary] speaking: It is important that we give this money in order that the lawyers are able to appeal the case into Circuit Court of San Francisco. We must realize the importance of winning this case because it is not an individual case but a case of great significance to every foreign-born in this country. Our security in this country depends upon the decision in this case. It could be you or me if this case is lost. . . .

" 'It has been moved and seconded that we pay the attorneys $500.00 on account.' "

Mr. Lagunilla responded in the affirmative when asked whether that motion carried.

Appellant also posted a release bond for Mr. Mangaoang, and, from time to time, advanced funds for travel expenses and paid a portion of the court costs and other expense items billed it by respondent.

These are but a few of the many circumstances shown by respondent's evidence which, if believed by the jury, would justify their finding that appellant ratified and accepted the benefit of the legal services rendered by respondent directly to Mr. Mangaoang, and indirectly to appellant, even though it be conceded *arguendo* that Mr. Mangaoang lacked authority to employ respondent to represent him at appellant's expense in the initial instance.

Since appellant makes no argument in its brief in reference to respondent's second cause of action, it need not be considered.

This record contains ample evidence (which the jury apparently believed) to support the verdict. The judgment entered thereon is accordingly affirmed.

HILL, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.