[No. 961-1. Division One—Panel 1. April 24, 1972.]

GLENDALE REALTY, INC., *Respondent*, v. CARL J. JOHNSON *et al., Defendants*, LETHA M. JOHNSON *et al., Appellants.*

*Nickell, Quinn & Mah* and *Richard Mah, Jr.,* for appellants.

*Short, Cressman & Cable* and *Donald W. Ferrell,* for respondent.

CALLOW, J.—This is a contest over the division of a real estate commission earned by the sale of real property located on Bainbridge Island.

Carl Johnson, a broker, conducted business on Bainbridge Island under the assumed name of Village Realty. The appellant, Letha Johnson, no relation to him, worked as his saleswoman.

Glendale Realty, Inc., has a branch office on Mercer Island, Washington, conducted by Evelyn H. Zanner as broker. Ruth Klumb was employed there as a saleswoman.

The action is brought by Glendale Realty, Inc., to recover 40 per cent of a real estate broker's commission under an oral agreement which was alleged to have been entered into during a telephone conversation between Letha M. Johnson and Evelyn Zanner.

The trial court found that Letha Johnson contacted Evelyn Zanner on August 2, 1968, and told her that Village Realty had acreage for sale on Bainbridge Island. Evelyn Zanner proposed that if Glendale Realty procured a buyer any resulting commission be divided equally. In response, Letha Johnson said she would consult her broker. Further, it was found that Letha Johnson called back the same day

representing that she had consulted her broker, that he would not accept an equal division but would agree to 60 per cent for the office that did the work on the transaction and 40 per cent for the other office. Mrs. Zanner accepted the proposal.

On August 12, 1968, Evelyn Zanner met with Letha Johnson on Bainbridge Island; and they inspected the property together. When Mrs. Zanner returned to Mercer Island, she told her saleswoman about the opportunity; and Ruth Klumb was instrumental in bringing one Richard Nelson to the attention of Letha Johnson as a prospective customer. Mr. Nelson visited the property and asked Letha Johnson which office should handle the transaction. He worked through Village Realty upon Mrs. Johnson's assuring him that he could work through either office. The transaction was consummated, and Village Realty was paid a net commission of $8,400.

The trial court found there was clear, cogent and convincing evidence that Letha Johnson's representation that she had consulted her broker and that he would agree to a 60-40 per cent commission division and her representation to the prospective buyer that a working agreement existed between Glendale Realty and Village Realty were untrue. The court concluded that Letha Johnson's statements were tortious misrepresentations and that she was liable thereon. The broker, Carl Johnson, was dismissed as a defendant on his counsel's unopposed motion for dismissal, the court finding that the broker was unaware of these representations.

Judgment on behalf of Glendale Realty for 40 per cent of the commission was entered against Letha M. Johnson individually and the marital community composed of Letha M. Johnson and her husband.

■ The record contains substantial evidence to support the findings of the trial court. Questions of credibility are for that forum. The testimony of the witnesses other than the testimony of the two antagonists, Letha Johnson and Evelyn Zanner, as well as the circumstances surrounding

the transaction, are consistent with the court's findings. Findings of fact cannot be set aside in such a situation.

 RCW 19.36.010 requires an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation to be in writing. This section of the Statute of Frauds does not apply to a contract between brokers to divide commissions. *Armstrong v. Webber & Co.,* 92 Wash. 295, 158 P. 957 (1916); *Orr v. Perky Inv. Co.,* 65 Wash. 281, 118 P. 19 (1911); *Jones v. Kehoe,* 61 Wash. 422, 112 P. 497 (1911). The telephone conversations contained the requisites of a contract and were not vague, uncertain or unenforceable. The parties manifested mutual consent, the terms of performance and the consideration each was to receive. Courts should not declare a contract void for uncertainty when the intent of the parties can be ascertained. *Janzen v. Phillips,* 73 Wn.2d 174, 437 P.2d 189 (1968); *Olson v. Balch,* 63 Wn.2d 938, 389 P.2d 900 (1964).

 *Markov v. ABC Transfer & Storage Co.,* 76 Wn.2d 388, 457 P.2d 535 (1969) held at page 395:

> To recover for fraud, the following elements must be proved by clear, cogent and convincing evidence:
> (1) a representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; (9) his consequent damage.

*See also Baertschi v. Jordan,* 68 Wn.2d 478, 413 P.2d 657 (1966); *Williams v. Joslin,* 65 Wn.2d 696, 399 P.2d 308 (1965). The trial court found that each of the elements had been established with the requisite degree of certainty and we concur.

 An agent representing authority which exceeds his actual authority is personally responsible and liable to the party to whom he makes such an unauthorized representation if the other party justifiably relies upon the represen-

tation. Restatement (Second) of Agency §§ 329 and 330 (1958) sets forth the theories of recovery as follows:

> § 329. Agent Who Warrants Authority.
> A person who purports to make a contract, conveyance or representation on behalf of another who has full capacity but whom he has no power to bind, thereby becomes subject to liability to the other party thereto upon an implied warranty of authority, unless he has manifested that he does not make such warranty or the other party knows that the agent is not so authorized.

> § 330. Liability for Misrepresentation of Authority.
> A person who tortiously misrepresents to another that he has authority to make a contract, conveyance, or representation on behalf of a principal whom he has no power to bind, is subject to liability to the other in an action of tort for loss caused by reliance upon such misrepresentation.

*Routh v. Wagner,* 53 Wn.2d 347, 333 P.2d 674 (1959), followed the reasoning of the Restatement holding that an agent who exceeds his authority so that his principal is not bound will himself be liable for the damage occasioned to the other contracting party.

Both counsel rely on *Ershig Sheet Metal, Inc. v. General Ins. Co. of America,* 62 Wn.2d 402, 383 P.2d 291 (1963), which quotes Restatement (Second) of Agency § 329 with approval. This was an action to recover for labor performed under an oral contract. Property damage had been suffered by a company. The company's insurance agent stated that there was coverage under the circumstances, and the company should proceed with necessary repairs. Thereafter, the insurer's adjustor informed the company president he doubted that coverage existed; but the company proceeded with repairs. The policy did not include coverage, and the agent had no authority to bind the insurance company. The dismissal of the agent was upheld since there was not a justifiable reliance upon his apparent authority. One is not entitled to rely on an agent's representation when he has been put on notice that a question exists as to the agent's authority.

As was held in *Yoakum v. Tarver,* 256 Cal. App. 2d 202, 64 Cal. Rptr. 7 (1967), where a party is ignorant of an agent's lack of authority and acts upon the faith of his express representations that he has authority, a cause of action arises against him. However, an agent has a defense to an action based upon his supposed warranty of authority where a party had reason to and could inform himself concerning the actual authority because of notice or the agent's disclaimer. *Nalley v. Whitaker,* 102 Ga. App. 230, 115 S.E.2d 790 (1960); Restatement (Second) of Agency § 329, comment *a* at 81 (1958).

In *Zugsmith v. Mullins,* 86 Ariz. 236, 344 P.2d 739 (1959), an instruction embodying the rule was approved at page 240:

"A person with knowledge of facts which would reasonably require him to inquire as to the authority of an agent with whom he is contracting and who has means of making such inquiry, occupies the same position under the law as if he had actual knowledge of the agent's lack of authority because he is charged with knowledge of facts which such inquiry would have developed.

It is contended that a real estate salesman is a special agent and that persons dealing with him do so at their peril. *Larson v. Bear,* 38 Wn.2d 485, 230 P.2d 610 (1951), involved a real estate salesman who represented to a house owner that the agency would keep the oil tank full during the owner's absence in the winter. This was not performed, plumbing froze, pipes burst and damage resulted. A judgment against the broker and the salesman was appealed by the broker only. The judgment against the broker was reversed specifically restricting the holding to the proposition that if the principal is to be held the third party must have ascertained the fact of agency and its nature and extent. *See also,* Annot., 58 A.L.R.2d 10, 44-46 (1958).

Where a special agent exceeds his limited authority, he is liable himself, although his principal is not, for the fraudulent representations. *See, Loma Vista Dev. Co. v. Johnson,* 142 Tex. 686, 180 S.W.2d 922 (1944); Annot., 58 A.L.R.2d 10 (1958).

Evelyn Zanner could justifiably rely upon the representation of Letha Johnson that she would clear the terms of the commission split with her broker and upon the direct representation of authority made in the second call. She had no knowledge that would cause her to question these representations and absent such knowledge was under no obligation to inquire into the agent's authority.

The rules are cogently discussed in *Robinson v. Pattee*, 359 Mo. 584, 222 S.W.2d 786 (1949), where the court states at pages 588-89:

> [W]here the agent has induced action, in reliance upon express or implied representations of authority, the agent and not the other party should assume the risk. Of these two, the agent is the one who takes the initiative; he is usually in the better situation to know of the existence of the authority, and where he undertakes, either expressly or by implication, to induce action, in reliance upon its existence, he would seem to be the party upon whom the risk of its non-existence should fall. [Citation omitted.]
>
> The basis of the purported agent's liability is not the contract but an express or implied covenant of authority. [Citations omitted.]
>
> The personal responsibility does not obtain if the absence of authority . . . is known to a plaintiff. [Citations omitted.]

The judgment is affirmed.

JAMES and WILLIAMS, JJ., concur.

Petition for rehearing denied June 9, 1972.