Ines C. FOWLER, Plaintiff and Respondent,

v.

Harold W. TAYLOR, dba Hal Taylor Associates, Defendant and Appellant.

No. 14399.

Supreme Court of Utah.

Aug. 16, 1976.

---

5. *State v. Farni*, 112 Ariz. 132, 539 P.2d 889 (1975).

Kent B. Linebaugh of Jardine, Johnson & Baldwin, Salt Lake City, for defendant and appellant.

Bryce E. Roe, Terry L. Christiansen, Salt Lake City, for plaintiff-respondent.

MAUGHAN, Justice:

Plaintiff initiated this action, alleging she was employed by defendant as a real estate broker, to engage in the sale of condominium units owned by Treasure Mountain Corporation. She claimed she acted as a real estate broker, at the request of defendant; performed all duties as such; and defendant was indebted to her for the reasonable value of her services, work, and labor in her capacity as a real estate broker. She alleged that a reasonable and customary amount, to be awarded for such services, was one per cent of the total sales made during the period she was so employed.

Upon trial to the court plaintiff was awarded judgment in the sum of $9,715.25. Defendant appeals therefrom.[1] We reverse, with instructions to dismiss plaintiff's first claim. Costs to defendant.

During the autumn of 1972, both parties were employed as real estate salesmen for Treasure Mountain Corporation. Defendant was director of the corporation's real estate sales and was plaintiff's supervisor; both were licensed with the State under an officer of the corporation, who was a licensed real estate broker. The corporation constructed two condominiums. In connection with the sales of the units the corporation offered a rental pool management agreement, which was deemed a security. Appropriate registration of the security was made, and both parties were licensed as security salesmen in October 1972. In December of 1972, defendant was licensed as a securities broker-dealer. Treasure Mountain determined to employ an independent sales agent to market the units, and it entered into a contract with defendant engaging him in that capacity for a commission of 3½ per cent. The salesmen were to receive 2½ per cent, and defendant

1. Plaintiff further sought a sales commission on certain transactions and was awarded judgment thereon, but defendant appeals only from the award of judgment on her first cause of action.

was to retain one per cent for his services as sales agent for the corporation.

Defendant's sales organization had a list of persons who had indicated an interest in purchasing the units as soon as defendant was qualified to market them. Defendant was not eligible to procure a real estate broker's license; so he asked plaintiff if she would activate her license and permit his organization to use her broker's license. She agreed; however, defendant performed all the paperwork, and paid the license fees and bond. The broker's license was issued in plaintiff's name with defendant and two others listed as salesmen.

With the necessary licensing completed, defendant's organization commenced operation on January 1, 1973, defendant as the securities broker and plaintiff as real estate broker. On February 19, 1973, defendant acquired his real estate broker's license, and plaintiff deactivated her license. During this 50-day interim defendant received pursuant to his contract with Treasure Mountain his one per cent commission, which amounted to $21,930.50. During this same period of time plaintiff as a salesman received $12,335, her 2½ per cent commission on the units she sold. Plaintiff continued as a salesman in defendant's organization until May 4, 1973, when defendant discharged her. On about July 25, 1973, plaintiff for the first time demanded that defendant pay her the one per cent commission that he had received from Treasure Mountain.

At trial, both parties agreed that at the time defendant requested to use plaintiff's license no compensation was discussed. Defendant testified plaintiff did not request compensation, and he proffered none. Plaintiff unequivocally testified her duties did not change after January 1, 1973, from those she had prior thereto. Nevertheless, she testified that when she consented to be the broker, she expected the one per cent commission.

Defendant testified that he had contacted a friend, Robert Monson, a real estate broker, and inquired whether he would broker for defendant's sales organization until defendant qualified for his license. Mr. Monson had offered to so act without charge. He also testified that another salesman in his organization had a broker's license, which could have been activated and defendant would have so requested, if plaintiff had demanded compensation. He presented evidence showing the compensation paid to a real estate broker for the "use" of his license varies according to the circumstances.

A review of the record does not reveal a scintilla of evidence to sustain the allegation in plaintiff's complaint that she had performed services, work, and labor in the capacity of a real estate broker for defendant. Her sole services were the execution of her signature on the applications in connection with the broker's license, bond, and trust account; and the assumption of any risks incidental to her status as a broker for defendant's sales organization. The record further reveals defendant performed all management duties for his organization and paid all the expenses arising from his performance, as selling agent of Treasure Mountain Corporation.

The trial court found between January 1 and February 19, 1973, plaintiff performed services as a real estate broker and salesman in behalf of defendant. Also, that performing these services, as a broker, plaintiff expected to be compensated; that defendant knew or should have known of such expectation.

It is customary for a real estate broker to receive a portion of the commission paid by the seller of real property. Defendant earned a brokerage commission of one per cent of his sales under his contract with Treasure Mountain, which totaled $21,930.-50 for the period in question. These commissions were as compensation for defendant's services as a real estate broker and a securities broker. Defendant incurred expenses of $2,500 in connection with his operations as selling agent for Treasure Mountain Corporation, thus the net commission was $19,430.50. The trial court

found that the reasonable value of the services performed by plaintiff, for defendant as a real estate broker, was one half of the net commissions earned by defendant, or $9,715.25.

The court concluded as a matter of law there was an agreement, implied in fact and in law, that defendant would pay to plaintiff the reasonable value of her services as a real estate broker, and that this agreement was not required to be in writing under the Statute of Frauds, Section 25-5-4(5), U.C.A.1953.

On appeal, defendant contends that the trial court erred in its ruling that the alleged agreement was not required to be in writing to be valid under Section 25-5-4(5), U.C.A.1953.

Section 25-5-4, U.C.A.1953, provides:

In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, is in writing subscribed by the party to be charged therewith:

\* \* \* \* \* \*

(5) Every agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation.

■ This provision of the Statute of Frauds was for the purpose of protecting the owners of land from fraudulent and fictitious claims for commissions. This provision does not apply to an oral agreement between a broker and another broker, salesman, or agent to share a commission.[2]

Also assigned as error is the conclusion of the trial court there was an agreement between the parties, implied in fact and law. Such a conclusion, defendant urges, is inconsistent by reason of the basic distinction in the underlying concepts of these two obligations.

■ An implied in fact contract differs from an express contract only in mode of expression.

. . . A contract is express or implied by reason of the expression of offer and acceptance,—whether there is a manifestation of mutual assent, by words or actions or both, which reasonably are interpretable as indicating an intention to make a bargain with certain terms or terms which reasonably may be made certain. The elements are basically identical in both cases, although the evidentiary facts may be expressed differently. . . .[3]

■ A quasi contractual obligation is not a true contract but is based on unjust enrichment or restitution.

. . . The promise is purely fictitious and is implied in order to fit the actual cause of action to the remedy. The liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. Where the facts indicate a duty of the defendant to pay, the law imputes to him a promise to fulfill that obligation. . . .[4]

■ Defendant contends there is no evidence to sustain a finding there was an implied-in-fact contract. With this contention we must agree, for there was no evidence of any action or conduct that reasonably could be construed as a manifestation of mutual assent indicating an intention to be bound on a contract whose terms were certain.

■ There was no evidence plaintiff was to perform any work, labor, or serv-

2. *Anderson v. Johnson*, 108 Utah 417, 160 P.2d 725 (1945); *Holland v. Morgan and Peacock Properties Company*, 168 Cal.App.2d 206, 335 P.2d 769 (1959); *Glendale Realty, Inc. v. Johnson*, 6 Wash.App. 752, 495 P.2d 1375 (1972); *Reilly v. Maw*, 146 Mont. 145, 405 P.2d 440 (1975); 44 A.L.R.2d 741, 743, Sec. 2, Anno.: Agreement between brokers as within statute requiring agreements for commissions for the sale of real estate to be in writing.

3. *Rasmussen v. United States Steel Co.*, 1 Utah 2d 291, 294-295, 265 P.2d 1002, 1004 (1954).

4. *Rapp v. Salt Lake City*, Utah, 527 P.2d 651, 654-655 (1974).

ices, in a capacity as a broker, under the Treasure Mountain contract. She was not a party to the contract, which by its express terms provides it shall inure solely to the benefit of defendant, and no other person shall acquire or have any right under or by virtue of it. Yet plaintiff claimed that solely by permitting defendant, for licensing purposes, to use her broker's license, she was entitled to the entire one per cent commission of defendant's contract with Treasure Mountain. The terms of the alleged agreement are unknown, viz., the duties, conditions, and compensation. Defendant believed the use of plaintiff's license was gratuitous; plaintiff expected to receive the entire fruits of defendant's contract. Their conduct cannot be construed as a manifestation of mutual assent to a contract whose terms are certain. Furthermore, plaintiff's conduct negates her claim that she expected the entire one per cent commission, since she was the broker and he was the salesman. Under Rule 19, Department of Business Regulation, Real Estate Division, plaintiff was required, if she considered herself employed as a broker, to provide defendant, a salesman, with a written contract setting forth the amount of money, if any, which he was entitled to retain from the commissions paid to him pursuant to his contract with Treasure Mountain.

■ Defendant further contends there was no implied in law or quasi contract. *Baugh v. Darley*[5] is cited, wherein this court stated that unjust enrichment occurs when a person has or retains money or benefits which in justice or equity belong to another. The fact that a person benefits another is not itself sufficient to require the other to make restitution. Also, not recoverable are services officiously or gratuitously furnished; services performed by the plaintiff, for his own advantage, and from which defendant benefits incidentally.

■ Defendant correctly claims there is no evidence to sustain a finding that he retains a benefit or money, which in justice or equity belongs to plaintiff. The use of plaintiff's license was a direct and immediate benefit to her. Defendant was the selling agent of Treasure Mountain, and his organization had a list of prospective purchasers. Until defendant was properly licensed, plaintiff could not commence selling and earning her commissions. In fact, the use of the license was mutually beneficial. Under these circumstances, did the defendant have a duty to pay plaintiff that the law will impute to him a promise to fulfill that obligation? It should be observed that in an action for unjust enrichment, the measure of damages is the reasonable value of what plaintiff has done.[6] Defendant presented evidence that when a person merely "brokers" for another, permitting one to use his license without performing any brokerage services, it may be done gratuitously or for a nominal compensation. Plaintiff's evidence was directed to the compensation, to which one is entitled, when actual brokerage services are performed.

■ Under the specific circumstances of this case, defendant cannot be said to be holding money or benefits, which in justice and equity belong to plaintiff.

HENRIOD, C. J., and ELLETT and TUCKETT, JJ., concur.

CROCKETT, Justice (dissenting):

The judgment of $9,715.25 was awarded to the plaintiff under the theory of implied contract, representing one half of the net income of broker's commission during the period defendant used plaintiff's broker's license. Implied contract arises, as the term imports, where there is no actual oral or written agreement, but where the conduct of the parties makes it reasonable to suppose that the promisor (defendant) reasonably should have expected to pay, and

---

5. 112 Utah 1, 184 P.2d 335 (1947).

6. *Baugh v. Darley*, note 5, supra.

the claimed promisee (plaintiff) could reasonably expect to be paid.[1] Where, as here, the evidence with respect to the just stated proposition was such that reasonable minds might differ as to their conclusion thereon, the question was one for the trial court to determine. The plaintiff having furnished the defendant something of value, which he desired and requested, under circumstances which the trial court found he should pay for, there was sufficient consideration to support the finding of defendant's implied promise to pay.[2]

The court having so resolved the issue just stated in favor of the plaintiff, it follows as a necessary consequence, that she should be entitled to some compensation. The question then arises as to what amount was reasonable and justifiable. This is similarly for the trial court. It is shown, as recited in the main opinion, that the income to the broker during the period in question amounted to $21,930.50, less expenses of $2,500, leaving a net commission for the real estate broker of $19,430.50. Looking at this upon the surface only, the one per cent commission on sales would have gone to the plaintiff as such broker. However, the trial court properly recognized that the defendant had actually done practically all of the work, and that he was also entitled to compensation. Wherefore, the court deemed it wise and just to divide the commission and gave the plaintiff judgment for only one half thereof.

We should look at the total circumstances in the light of the standard Rules of Review which require us not to become finders of the fact, but to recognize the prerogatives of the trial court, to accord verity to his findings and judgment,[3] and to sustain the findings and judgment if there is any reasonable and substantial basis in the evidence to support them; and

conversely, not to reverse unless there is no such reasonable or substantial basis to support them. In that standard, I am not persuaded that any injustice has resulted, nor that there is any ground shown for reversal. Therefore, I would affirm the findings and judgment of the district court.

---

1. See the leading and often cited case of *Western Oil Refining Co. v. Underwood,* 83 Ind.App. 488, 491, 149 N.E. 85, 86; see discussion in *Ross v. Raymer,* 32 Wash.2d 128, 201 P.2d 129; *McCollum v. Clothier,* 121 Utah 311, 241 P.2d 468.

2. *See Woods v. McQueen,* 195 Kan. 380, 404 P.2d 955; 1 Williston, Contracts, Sec. 102A (3d ed. 1957); 5 Corbin, Contracts, § 1107.

3. *Hardy v. Hendrickson,* 27 Utah 2d 251, 495 P.2d 28.