[No. 33512.   Department Two.   September 27, 1956.]

MILONE AND TUCCI, INC., *Respondent*, v. BONA FIDE BUILDERS, INC., *Appellants*.[1]

[1]Reported in 301 P. (2d) 759.

*Neal, Bonneville & Hughes,* for appellant.

*Burkey, Burkey & Marsico,* for respondent.

*Fred W. Catlett, amicus curiae.*

WEAVER, J.—The sole question in this action for breach of an alleged contract is whether a contract exists between the parties.

Plaintiff and defendant are corporations engaged in the contracting business. Plaintiff specializes in the construction and installation of underground utilities; defendant specializes in the construction of commercial and industrial buildings.

The United States government advertised for bids for the construction of four buildings. Under the specifications, the labor to be performed and the materials to be furnished were separated into thirty-eight separate items. Items numbered 15 through 37 of the specifications were designated "utilities" and, for the most part, covered water and sewer installations. The government required that bidders on the prime contract bid upon every item listed in the plans and specifications.

General and subcontractors interested in bidding for the job secured the plans and specifications. Several days prior to bid opening time, plaintiff telephoned a number of general contractors, including defendant, to inquire whether they desired to be furnished with plaintiff's bid on the subcontract covering items 15 through 37. Plaintiff prepared its bid of $20,774.85 on these items and furnished it to a number of the general contractors, including defendant. At the time of furnishing the bid, plaintiff did not expect to be reimbursed for the actual costs ($210) of preparing the bid,

which it furnished to a number of prime contractors, except as it might be compensated by receiving a subcontract to perform the work.

In compiling its bid on the prime contract, defendant used the figures contained in plaintiff's bid on items 15 through 37. A witness for defendant testified that plaintiff's figures had been used, with the mistaken belief that plaintiff's bid was the lowest one submitted to it up to bid-opening time. It appears, from an abstract of the bids submitted to the government, that the bids of six prime contractors on items 15 through 37 were lower than defendant's bid (based on plaintiff's figures) on these items. Hence, it would appear, since defendant was awarded the prime contract with a low bid of $224,929.54, that defendant's bid on items *other* than items 15 through 37 was the controlling factor.

Defendant awarded the entire "mechanical" subcontract to Ray N. Erickson, Inc., for $63,803.12. This subcontract included other contract items, in addition to items 15 through 37, except it did not include items 33 and 34. It refused to award the subcontract for contract items 15 through 37 to plaintiff.

It is plaintiff's (respondent's) contention, as stated in its brief,

". . . that appellant [defendant], by using the bid figures from respondent [plaintiff] on a portion of the work required to be performed, was obligated to award the subcontract to respondent at its bid figure, *rather than to another bidder whose bid may have been lower* . . ." (Italics ours.)

The trial court entered judgment for plaintiff in the sum of $4,154.97, the amount the court found to be the "reasonable profit" plaintiff would have made had the subcontract been awarded to it.

The trial court advanced two theories in support of its judgment. First, that the decision of this court in *Western Asphalt Co. v. Valle,* 25 Wn. (2d) 428, 171 P. (2d) 159 (1946), is authority for the proposition that the *use* of estimates furnished by a subcontractor to a prime contractor,

who thereafter receives the general contract for the entire job, gives rise to an implied contract between the prime contractor and the subcontractor.

The trial court's second theory is found in finding of fact No. XI.

"The Court finds that *there is,* and at all of the times referred to herein there existed *a general custom in the said industry* for such general contractors, prior to bid opening time, to solicit bids, or to accept unsolicited bids, from contractors in such specialized fields for the performance of such specialized work, and which bids were furnished to the general contractors, not only as a valuable aid to such contractors in preparing their bids, but as an offer to perform the work, specified in such subbid, for the price bid therein, and if the figures presented in it were accepted by it and used by the general contractor, in compiling his or its bid, and such general contractor is awarded the contract by the Government, *that, by the acceptance and use of the figures compiled by said subcontract bidder on the various items included therein, there was created and there arose an implied contract to enter into a subcontract with such bidder whose bid the general contractor so accepted and used for such purpose,* irrespective of whether or not such bid was the lowest bid submitted to such general contractor, prior to the opening of the bids by the Government." (Italics ours.)

*In Western Asphalt Co., supra,* the quotation of the subcontractor was secured by the prime contractor under circumstances materially different from those of the case before us. There was evidence, if believed, from which the jury could conclude that there was a contract between the parties. This court affirmed an order granting a new trial, saying: "The evidence on this phase of the case presents a question to be determined by the trier of the facts."

A careful reading of the opinion does not disclose that this court held that the *use* of a bid furnished by a subcontractor to a prime contractor gives rise to an implied contract between the prime contractor and the subcontractor, if the prime contractor is awarded the general contract.

■ Usage and custom are admissible in evidence to explain the terms of an express or implied contract once the

contract is established. The fallacy of the trial court's second theory is that an implied contract cannot *arise* from proof of usage and custom. The effect of custom or usage upon contractual obligations is dependent upon the existence of an actual contract between the parties. Where there is no contract, proof of usage and custom will not make one. *Pearce v. Dulien Steel Products,* 14 Wn. (2d) 132, 135, 127 P. (2d) 271 (1942), and cases cited.

Thus, as we analyze the records, we are back to the question suggested in the opening sentence of this opinion: Does a contract exist between the parties?

▮ The claimed agreement, upon which plaintiff bases its right to recover, is not an express contract. As this court pointed out in *Chandler v. Washington Toll Bridge Authority,* 17 Wn. (2d) 591, 600, 137 P. (2d) 97 (1943), the law recognizes two classes of implied contracts: those implied in fact, and those implied in law. The contracts falling within the latter classification are generally termed quasi contracts and arise from an *implied* legal duty or obligation; they are not based on a contract between the parties or upon any consent or agreement; they are based generally upon the fundamental principle of justice that no one should be unjustly enriched at the expense of another.

▮ In view of two facts, (1) that plaintiff did not expect to be reimbursed for the actual cost of preparing its bid, except as it might be compensated by receiving a subcontract to perform the work, and (2) that the bids of six prime contractors on items 15 through 37 were lower than defendant's bid for these items, based on plaintiff's figures, we conclude that the record will not support recovery upon the theory of quasi contract or unjust enrichment.

▮ On at least four occasions (*Troyer v. Fox,* 162 Wash. 537, 554, 298 Pac. 733, 77 A. L. R. 1132 (1931); *McKevitt v. Golden Age Breweries,* 14 Wn. (2d) 50, 52, 126 P. (2d) 1077 (1942); *Kellogg v. Gleeson,* 27 Wn. (2d) 501, 505, 178 P. (2d) 969 (1947); *Ross v. Raymer,* 32 Wn. (2d) 128, 138, 201 P. (2d) 129 (1948)), this court has quoted with approval a definition of a contract implied in fact,

appearing in *Western Oil Refining Co. v. Underwood*, 83 Ind. App. 488, 491, 149 N. E. 85 (1925), as follows:

"A true implied contract is an agreement of the parties arrived at from their acts and conduct viewed in the light of surrounding circumstances, and not from their words, either spoken or written. *Like an express contract, it grows out of the intentions of the parties to the transaction, and there must be a meeting of minds. Such a contract differs from an express contract only in the mode of proof.*" (Italics ours.)

■ Before a court can find the existence of an implied contract in fact, there must be an offer; there must be an acceptance; the acceptance must be in the terms of the offer; it must be communicated to the offeror; there must be a mutual intention to contract (*Chandler v. Washington Toll Bridge Authority, supra*); there must be a meeting of minds of the parties. (*Richards v. Kuppinger*, 46 Wn. (2d) 62, 66, 278 P. (2d) 395 (1955).

We turn to plaintiff's "offer." It reads as follows:

"To the Contractors:

"We are pleased to *quote* the following prices on the Tank Park Facilities, Proposal No. Eng-45-108-54-85, Fort Lewis, Washington. Our proposal does not include any engineering and it does not include cost of contractor's bond." (There follows contract items 15 through 37 with a unit price and a total "amount" for each item, totaling $20,774.85.) (Italics ours.)

For the purpose of this opinion, we consider this to be in the language of an offer to do the work identified for the price quoted; there is, however, authority indicating that this assumption stretches its interpretation. See *Robert Gordon, Inc. v. Ingersoll-Rand Co.*, 117 F. (2d) 654, 658 (C.C.A. 7th; 1941).

■ Did defendant's use of plaintiff's offer, in its bid upon the prime contract, constitute an acceptance thereof, conditioned only upon the prime contract being awarded to defendant? We think not.

Basically, plaintiff's offer was to perform certain specific work for the price quoted. Whether defendant used plaintiff's offer in preparing its bid on the prime contract was,

as Judge Learned Hand described it in *James Baird Co. v. Gimbel Bros., Inc.,* 64 F. (2d) 344 (C. C. A. 2nd; 1933), a "matter of indifference to it."

In *R. J. Daum Constr. Co. v. Child,* (Utah) 247 P. (2d) 817 (1952), the prime contractor, having used the bid of the subcontractor in making its bid upon the prime contract, maintained an action for the subcontractor's refusal to perform the work. Whether there was a binding contract depended upon whether there was a meeting of minds. In referring to the *use* of the subcontractor's bid, the court said:

"Neither the fact that appellant *used* respondents' bid in figuring its bid to the Government, that appellant's bid to the Government was the low bid and it was finally awarded the Government contract, the communication of such facts to respondents, . . . nor all these circumstances together definitely manifested an intention to accept respondents' bid and be presently bound thereby. Each and all of these circumstances are as consistent with an intention and expectation only to negotiate a contract in the future as they are *with a present intention* to accept and enter into a binding contract."

*Williams v. Favret,* 161 F. (2d) 822 (C. C. A. 5th; 1947), involves an action by a subcontractor against the general contractor for damages caused by defendant's refusal to contract with him. Defendant admitted that in making his bid as general contractor, he had received and used plaintiff's bid, and that the general contract had been awarded to him; but he denied that he had ever accepted plaintiff's bid.

Plaintiff's bid contained the following:

"If our estimate used wire us collect prior to June 6 or else same is withdrawn."

June 6th defendant wired plaintiff:

"We used your bid for wiring on barracks and dispensary Gulfport."

In affirming judgment for defendant, the court said:

"Defendant's telegram of the 6th sent in direct response to plaintiff's of the 4th *contained nothing from which an acceptance of the offer, conditional or otherwise, can be implied.*"

*A fortiori,* in the instant case, the mere use of plaintiff's figures did not constitute an acceptance of plaintiff's offer. Hence, there is no contract between the parties, and we do not reach the question of whether plaintiff's bid was the low bid received by defendant.

Plaintiff's (respondent's) motion to strike appellant's reply brief is well taken. It does not comply with Rule on Appeal 41 (1), 34A Wn. (2d) 42 (as amended, effective March 1, 1954). No costs will be taxed for it.

The judgment is reversed, with instructions to dismiss the action.

MALLERY, HILL, and FINLEY, JJ., concur.

---

February 7, 1957. Petition for rehearing denied.

