Thomas O. TORGERSON, Relator,

v.

**GOODWILL INDUSTRIES, INC.,**
**Department of Jobs and**
**Training, Respondents.**

No. CX–86–407.

Court of Appeals of Minnesota.

July 29, 1986.

Thomas O. Torgerson, Saint Paul, pro se.

Hubert H. Humphrey III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., Saint Paul, for Dept. of Jobs and Training.

Considered and decided by POPOVICH, C.J., and FOLEY and FORSBERG, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Thomas O. Torgerson appeals from the denial of unemployment compensation benefits arguing (1) he was not discharged for his misconduct, and (2) he had made reasonable efforts to maintain his sobriety and retain his employment despite his serious illness of chemical dependency. We affirm.

## FACTS

Relator was employed full-time by Goodwill Industries for approximately nine years before he was dismissed on July 10, 1985. Prior to this, relator underwent inpatient treatment for chemical dependency in 1971 and 1979. In the five years before his dismissal, his periods of sobriety extended from three months to one year.

On Thursday, July 5, 1984, relator telephoned his employer to report that he would not be able to attend work because he had been drinking. On Monday, July 9, relator again contacted his employer to report that he was still drinking, was sick and would not be into work that day. On Tuesday, July 10, the employer received a similar telephone call in which relator told his employer he was going to seek help from a counselor. Subsequently, relator met with a counselor and was encouraged to attend Alcoholics Anonymous meetings on a regular basis and an out-patient treatment program. Relator's sister contacted his employer and learned that unless relator returned to work, he risked losing his job. Relator returned to work on July 16, 1984. His employer gave him a written warning at that time and instructed relator to attend AA meetings on a regular basis. Relator agreed to this proposal and in the ensuing year attended these meetings three or four times when he felt he needed to do so.

On Monday, June 17, 1985, relator failed to report to work or to contact his employer. On June 24, 1985, Goodwill's vice-president of operations mailed a letter to relator asking for an explanation for his absence. Relator was aware that Goodwill's attendance policy provided that an employee who failed to call in or report to work for three consecutive days was subject to discharge. On July 1, 1985, relator wrote the vice-president of operations explaining his alcoholism and that he had been absent because he had gone on a drinking binge after having attended "a wedding and graduations in the family." When he stopped drinking, he had missed three days of work

without reporting in and assumed he had been terminated. The two subsequently set up a meeting for July 8 to discuss relator's situation.

On July 8, Goodwill's vice-president and its transportation manager met with relator. The parties discussed relator's chemical dependency problem and whether relator had met his obligation to attend AA meetings on a regular basis. The vice-president testified:

> During the meeting we discussed the drinking problem. We also discussed his absence of approximately a year earlier. We discussed the difficulties that his absence was creating for the company and he, Mr. Torgerson was asked several times what his thoughts were about obtaining assistance for his problem. If he was going back to AA. He stated several times that he didn't feel that AA was a support factor to him, that he felt that he could do as well on his own without their assistance. I had mentioned withdrawing or disassociating himself with drinkers or alcohol, also to go back to AA to get assistance. And one of the avenues is to call in or advance notice.

The vice-president asked relator to return for another meeting in two days, at which time he should present a written statement of his thoughts and comments concerning the July 8 meeting.

On July 10, relator returned with a written statement in which he stated he would attend AA meetings on a regular basis and call in if he was going to be absent. Relator also noted that his alcoholism interfered with his job about once a year but that he would strive to remain sober. After reviewing the statement, the vice-president of operations concluded that relator "would become a figurative member of AA" but that his commitment was not "sincere or strong enough" to return to work at Goodwill. The vice-president testified: "Tom was still allowing himself the doubtful period of time for absenteeism once a year, although the letter did not state that."

On July 10, the vice-president decided to discharge relator for his failure to report to work over the three-day period without calling in, and also because he was not convinced relator would abide by the conditions he had agreed to in light of his prior failure to abide by similar conditions imposed a year earlier.

Relator's claim for unemployment compensation benefits was denied by the claims deputy who found that he was discharged for misconduct. On appeal, the referee affirmed this decision, finding that relator was discharged for misconduct and had not made reasonable efforts to retain his employment despite his chemical dependency problem. On review, the Commissioner's representative affirmed this decision. This appeal followed.

## ISSUES

1. Does the record support the Commissioner's decision that relator was discharged for misconduct?

2. Does the record support the Commissioner's finding that relator, who had a chemical dependency problem, did not make reasonable efforts to retain his employment at Goodwill?

## ANALYSIS

1. *Misconduct.*

■ The Commissioner found that relator violated his employer's policy and was discharged for misconduct when he was absent from work for more than three days without notifying his employer. The Commissioner noted that it was the employer who made the first contact with relator to determine the reason for this absence. The Commissioner also found that relator was subject to dismissal for misconduct for his lengthy, unexplained absence regardless of the employer's policy. *See, e.g., Smith v. American Indian Chemical Dependency Diversion Project,* 343 N.W.2d 43, 45 (Minn.Ct.App.1984) (missing three days work because of incarceration for traffic offense constitutes misconduct even though employer was notified).

The Commissioner's decision clearly falls within the definition of misconduct set forth in *Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 375, 204 N.W.2d 644, 646 (1973). In addition, the Minnesota Supreme Court held in *Moeller v. Minnesota Department of Transportation,* 281 N.W.2d 879, 882 (Minn.1979), that such absences may constitute misconduct even though the employee is addicted to alcohol.

### 2. *Reasonable Efforts.*

██ Minn.Stat. § 268.09, subd. 1(2) (1984) provides:

An individual shall not be disqualified under clauses (1) and (2) of this subdivision under any of the following conditions:

\* \* \* \* \* \*

(b) The individual is separated from employment due to his own serious illness provided that such individual has made reasonable efforts to retain his employment;

An individual who is separated from his employment due to his illness of chemical dependency which has been professionally diagnosed or for which he has voluntarily submitted to treatment and who fails to make consistent efforts to maintain the treatment he knows or has been professionally advised is necessary to control that illness has not made reasonable efforts to retain his employment.

Relator claims he was discharged because his employer feared he would drink on the job, although he had never done so, and because he had not made a sufficient commitment to remain sober. Relator explains that an alcoholic cannot define a period of sobriety, as his employer had demanded of him, and that such periods of sobriety are unknown because an alcoholic takes only one day at a time. He also claims that the Commissioner erred in finding that he did not make reasonable efforts to retain his employment since he had committed himself to attend AA meetings on a regular basis and to telephone in when he would be unable to attend work.

The Commissioner's representative noted in his decision that relator had been through alcoholism treatment programs twice, and that in July 1984, when he entered an agreement with his employer, he intended to participate in AA on a regular basis as advised by a counselor from the Ramsey County Detoxification Center. In the 11 months following this agreement, relator attended AA meetings only three or four times. The Commissioner found: "This is not a consistent effort to control his illness."

In *Moeller,* the Minnesota Supreme Court stated the standard for reasonable efforts as follows:

In determining what is a reasonable effort to retain employment, the Commissioner must determine what is reasonable for the particular employee under the circumstances of that case. *See Jacobs v. Calif. Unemp. Ins. App.Bd.,* supra [25 Cal.App.3d 1035, 102 Cal.Rptr. 364 (1972)] where the court required the unemployment board to determine whether or not the employee had the ability to abstain from drinking. *See also Mooney v. Board of Review,* 39 Pa.Cmwlth. 404, 395 A.2d 675 (1978), where the court denied unemployment compensation benefits because it found that the employee had the ability to refrain from heavy drinking.

*Moeller,* 281 N.W.2d at 882. *Moeller* was decided in 1979, and the statute today defines "reasonable efforts." We test the case by the statutory standard.

Here, the Commissioner found it reasonable for relator to attend AA meetings on a regular basis. Relator admitted he did not do this, stating:

Well it wasn't really on a regular basis. I went to AA when I more or less felt as though I needed an AA meeting. It wasn't like a weekly, it was just more or less maybe once a month, or once every two months something like that.

Relator explained: "I didn't feel as though it was necessary [to attend AA on a regular basis] because I was sober and I didn't

feel it was necessary to go on a regular basis."

The evidence supports the Commissioner's decision that relator did not make reasonable efforts to retain his employment by attending AA meetings on a regular basis as he had agreed in July 1984. In addition, it was reasonable for the employer to assume that relator would not maintain a similar commitment in the ensuing year.

## DECISION

We affirm the decision of the Commissioner.