[No. 55879-5. En Banc. September 28, 1989.]

THOMAS M. HENSON, *Appellant,* v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent.*

*James D. Maloney III* and *Weeks & Skala,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *John M. Sells, Assistant,* for respondent.

DOLLIVER, J.—Beginning in May 1966, Plaintiff, Thomas M. Henson, worked as a shipping clerk for Tam Engineering Corporation (Tam). In June 1983, Tam perceived that Henson might have an alcohol problem. At the suggestion of Tam, Henson went to Puget Sound Hospital for an evaluation. The director of treatment did not diagnose Henson but suspected an alcohol problem based on Henson's

drinking habits and denial of any problem. Henson returned to work and at this time Tam took no further action.

In October 1984, Henson came to work with the odor of alcohol about his person. Although Henson never drank on the job and it was not alleged his performance was impaired by drinking, his duties required contact with customers. Consequently, Tam felt the odor of alcohol about Henson was in itself detrimental to Tam's interests.

Following at least six warnings, Tam insisted Henson attend the Northwest Treatment Center (NTC) for 21 days. Tam agreed to pay half of the costs of the program not covered by Henson's medical insurance. Henson agreed in order to save his job.

On November 16, 1984, Henson was released from the treatment center with a diagnosis of "[m]iddle stage alcoholism". NTC recommended that Henson comply with the following aftercare program: (1) that he attend 12 weeks of aftercare group therapy at the treatment center; (2) that he return home and to work; and (3) that he attend at least three Alcoholics Anonymous (AA) meetings per week and get a sponsor.

When Tam inquired whether Henson would comply with all the recommendations of the treatment center as part of the complete program, Henson refused to commit to the AA meetings. Tam warned Henson that discharge was the consequence of refusal. Henson still refused. Tam placed Henson on a 3–day suspension so he could reconsider. Henson left work and never returned. Tam waited a few more days and then discharged Henson.

Henson applied for unemployment benefits. After a hearing, the Employment Security Department (ESD) denied Henson unemployment benefits on the basis that he was discharged for work–connected misconduct. On appeal the administrative law judge upheld the denial. That denial was then affirmed by the Commissioner of the ESD. When the Superior Court upheld the Commissioner's decision,

plaintiff appealed to the Court of Appeals. After oral argument and extensive conferencing, the Court of Appeals certified the appeal to the Supreme Court. We accepted certification and affirm.

## I

The preliminary issues are the standard of review and the burden of proof.

██ ██ Issues of fact are reviewed under the clearly erroneous standard. RCW 34.04.130(6)(e). *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 324, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983). Issues of law are reviewed under the error of law standard, in which the reviewing court may "essentially substitute its judgment for that of the administrative body." *Sellers,* at 325. With mixed questions of law and fact, the court determines the correct law independent of the agency's decision and then applies it to the facts as found by the agency. *Sellers,* at 329–30. We recently applied this mixed question standard to the meaning of "misconduct". *Macey v. Department of Empl. Sec.,* 110 Wn.2d 308, 313, 752 P.2d 372 (1988). This standard applies here.

After review of the record, we find that the facts found by the Superior Court are not clearly erroneous. The remaining and primary issue before us is one of law, that is, whether this refusal to attend the AA meetings fits the legal definition of disqualifying "misconduct."

As to the burden of proof, on appeal the burden is on Henson, as the party attacking the decision, to prove that his conduct did not amount to disqualifying misconduct. *See* RCW 50.32.150; *Schuffenhauer v. Department of Empl. Sec.,* 86 Wn.2d 233, 235, 543 P.2d 343 (1975), (citing *In re All–State Constr. Co.,* 70 Wn.2d 657, 425 P.2d 16 (1967)).

## II

RCW 50.20.060(1) provides:

An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he or she has

been discharged or suspended for *misconduct connected with his or her work . . .*

(Italics ours.)

■ The question here is whether an employee's refusal to attend AA meetings which were part of the overall NTC program as a condition of his continued employment constitutes "misconduct" within the statute. In *Macey v. Department of Empl. Sec., supra,* we formulated the following 3–part test to establish disqualifying misconduct: (1) the employer's rule must be reasonable under the circumstances; (2) the conduct of the employee must be connected with the work; and (3) the conduct of the employee must in fact violate the rule. *Macey,* at 319.

The *Macey* test, however, applies only to on–duty misconduct, as opposed to the off–duty test established in *Nelson v. Department of Empl. Sec.,* 98 Wn.2d 370, 375, 655 P.2d 242 (1982). Because *Macey* only applies to on–duty conduct, we must first determine whether Henson's conduct was on duty or off duty.

■ We find that Henson's conduct was on duty. Henson was not discharged for being an alcoholic, for having alcohol on his breath or even for not going to the AA meetings. He was discharged strictly for his refusal to complete the NTC program which he had previously agreed to enter. The refusal itself was made on the premises and during working hours; it constitutes on–duty misconduct. Furthermore, although work performance was not impaired, Henson's alcohol problem did manifest itself more than once on duty in the odor of alcohol about his person. The employer had a legitimate interest in being assured that the agreed alcohol treatment program would be fully completed to guard more reliably against future on–duty problems.

Because the conduct was on duty, *Macey* applies. The first prong, whether the employer's rule was reasonable under the circumstances of employment, is satisfied. The key is the qualifying phrase "under the circumstances". While the employer simply could have required Henson to eliminate the problem and left the method up to Henson,

the employer's chosen course of action was also reasonable. The employer desired to retain Henson as an employee, but the ineffectiveness of past warnings demonstrated that the problem was unlikely to be resolved without a reliable treatment program. Therefore, because the employer was not an expert in the treatment of alcoholism, it was reasonable for the employer to insist that Henson follow the recommendation of its experts, in this case, NTC.

Tam could have fired Henson for coming to work with the odor of alcohol. Instead, it had Henson take 21 days off work for the treatment program. The employer also helped pay for the treatment. Because of the time and money which the employer had already invested in Henson's recovery, it was reasonable for the employer to expect Henson to complete the entire treatment program.

Furthermore, Tam had reasonable interests at stake in requiring assurances that Henson would complete the entire treatment program. When Henson refused to complete the program, the risk that he would come to work with alcohol on his breath was substantially increased. It was reasonable for the employer to require Henson's promise to cooperate with NTC's recommendations before allowing Henson to return to work, just as it was reasonable in the first place for the employer not to wait until a customer complained before insisting Henson get reliable, professional treatment.

Finally, Henson had agreed to the NTC treatment program. In doing so, Henson made an implied contract. This court has repeatedly defined an implied contract as "an agreement of the parties arrived at from their acts and conduct viewed in the light of surrounding circumstances". *Davis v. Niagara Mach. Co.,* 90 Wn.2d 342, 347, 581 P.2d 1344 (1978) (quoting *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.,* 49 Wn.2d 363, 368, 301 P.2d 759 (1956); *Western Oil Ref. Co. v. Underwood,* 83 Ind. App. 488, 491, 149 N.E. 85 (1925)).

We find the conduct of the parties sufficient in light of the circumstances to show an agreement. The employer

offered to retain Henson as an employee but insisted that he complete the NTC treatment program as a condition of continued employment. Henson accepted his employer's offer by attending the 21–day treatment portion and also by allowing his employer to pay part of the costs. The facts indicate that Henson would not have taken the NTC program except to save his job. Neither would his employer have paid the program costs if it had known Henson would not complete the program. The only interpretation of these events is that Henson and his employer had an agreement.

Henson argues that he agreed only to the initial 21 days of treatment and not to the aftercare portion. It is not, however, crucial as to whether Henson specifically agreed to follow the aftercare portion of the NTC program. In agreeing to enter the NTC program, Henson had agreed to deal with his drinking problem as directed by NTC. It was reasonable then for the employer to require Henson to follow NTC's recommendations, regardless of whether Henson concurred with the diagnosis. Henson's refusal willfully violated this implied contract.

Given the reasonable solution chosen for Henson's continued employment, the reasonable interests of the employer in the completion of the program and Henson's initial agreement to enroll in the program, the employer's rule was sufficiently reasonable to satisfy the first prong of the *Macey* test.

The second prong is that the conduct must be connected with the work. We said in *Macey* that the proper inquiry should be the effect of the employee's conduct on his work performance in particular and on the work force in general. *Macey,* at 319.

Though actual work performance was not impaired, Henson's duties required contact with the public. This meant that the employer could not have Henson working in that capacity unless the employer could be ensured that Henson would no longer smell of alcohol. Another employee would have to perform Henson's public duties until the

employer could trust that Henson's problem had been adequately resolved. Consequently, Henson's later refusal to complete the program had a direct effect on both work performance and the work force.

Finally, it is within the legitimate interests and expectations of an employer that all employees come to work without smelling of alcohol. For these reasons, Henson's refusal is sufficiently connected with the employer's work to satisfy the second prong in *Macey*.

The third prong, that the conduct must in fact violate the rule, is also satisfied. The employer's rule was that Henson attend three AA meetings per week. Henson's refusal is uncontested.

Henson has not met the burden to prove that the employer's order was unreasonable. *See* RCW 50.32.150; *Schuffenhauer v. Department of Empl. Sec., supra.*

We hold Henson's on–duty refusal to complete the aftercare portion of the agreed alcoholic treatment program constituted misconduct connected with work disqualifying Henson for unemployment benefits under RCW 50.20-.060(1).

The Superior Court of Pierce County is affirmed. Plaintiff's motion for attorney fees is denied.

UTTER, PEARSON, ANDERSEN, and SMITH, JJ., concur.

DURHAM, J. (dissenting)—There is no evidence in the record connecting appellant Thomas Henson's refusal to attend a particular follow–up alcohol treatment program with his ability to perform his duties as a shipping clerk. Thus, there is no legal basis for the determination, made in the first instance by the Employment Security Department and affirmed by a majority of this court, that Henson was discharged for work–related misconduct. For this reason, I would hold that Henson is not disqualified from receiving unemployment compensation under the terms of RCW 50.20.060.

## I

Henson was discharged from his job as a shipping clerk with Tam Engineering Corporation (Tam) on December 4, 1984. Following his discharge, he applied to the Employment Security Department (ESD) for unemployment compensation. ESD denied Henson's application, holding that he was disqualified for benefits pursuant to RCW 50.20.060 because his discharge was for "misconduct connected with his . . . work". The case is before us on Henson's appeal from ESD's ruling.

The unchallenged finding of the agency below was that Henson's discharge occurred because of his "fail[ure] to follow through on a program of alcoholism treatment." More particularly, Henson was discharged because he refused to attend Alcoholics Anonymous (AA) meetings after he had successfully completed a residential program for alcohol abuse. The single issue presented to us, therefore, is whether Henson's refusal to attend AA meetings constitutes "misconduct connected with his . . . work" within the meaning of RCW 50.20.060.

## II

Washington's state–organized system of unemployment insurance operates according to what we have described as a "fault principle". *Ancheta v. Daly,* 77 Wn.2d 255, 261, 461 P.2d 531 (1969). This principle finds expression both in the statutory scheme's preambulatory provision, RCW 50.01.010; *see Macey v. Department of Empl. Sec.,* 110 Wn.2d 308, 752 P.2d 372 (1988), as well as in several of its disqualifying clauses. *See Ancheta,* at 261. Among the latter is RCW 50.20.060, which temporarily disqualifies an unemployed individual from receiving benefits when "he or she has been discharged or suspended for misconduct connected with his or her work".

Our courts have had some difficulty articulating useful guidelines for applying the work–related misconduct rule of

RCW 50.20.060. *Macey* attempted a clarification, summarizing "the general criteria establishing disqualifying misconduct" as follows:

> (1) The rule must be reasonable under the circumstances of the employment; (2) the conduct of the employee must be connected with the work as described above; and (3) the conduct of the employee must in fact violate the rule.

*Macey,* at 319. Even still, problems remain. It is difficult, for example, to distinguish the determination that a rule of conduct is "reasonable under the circumstances of the employment" from the separately articulated work–nexus inquiry. Indeed, their indistinctiveness is illustrated by the majority's analysis of this case; the majority has fairly well decided the case before it even reaches the second *Macey* criterion.

I will not here attempt yet another restatement of the factors underlying the concept of work–related misconduct. Rather, in approaching the particular question of whether such misconduct occurred in this case, I will apply a more evaluative approach. This analysis will draw primarily on the holdings of previous cases. *See* Kempfer, *Disqualifications for Voluntary Leaving and Misconduct,* 55 Yale L.J. 147, 166 (1945) ("The concept of connection with the work is one which can best be delimited by the gradual process of inclusion or exclusion as the cases arise, rather than by an attempt to frame a precise definition.").

### III

Absent in this case, but an essential component of findings of work–related misconduct in previous decisions, is a showing that Henson's refusal to attend AA meetings had a significant adverse effect on his employer. As discussed above, the disqualification for work–related misconduct effectuates the legislative policy of restricting unemployment compensation to cases where a worker becomes unemployed through no fault of his own. That is, the cause of discharge must have been conduct the employee himself

can be said to be responsible for, rather than innocent conduct that results in discharge merely because it violates a rule or policy of the employer. *See Safeco Ins. Cos. v. Meyering,* 102 Wn.2d 385, 392, 687 P.2d 195 (1984).

Washington case law consistently demonstrates the importance of such adverse effect. For example, in *Macey* we upheld the ESD's decision denying unemployment benefits, pursuant to RCW 50.20.060, to an employee who had been discharged for making a false statement concerning his criminal history on his employment application. The false answer, we noted, "was harmful to the employer who hired the claimant in reliance on the specific information given in the application form." *Macey,* at 321; *see also Nelson v. Department of Empl. Sec.,* 98 Wn.2d 370, 375, 655 P.2d 242 (1982) (identifying "harm to the employer's interest" as an element of work–related misconduct).[1]

Adverse effect is similarly present in cases in which the Court of Appeals has found work–related misconduct. In *Peterson v. Department of Empl. Sec.,* 42 Wn. App. 364, 711 P.2d 1071 (1985), *review denied,* 105 Wn.2d 1011 (1986), the employee's disregard of his supervisor's direct instructions had an obvious adverse effect on his employer's ability to manage its enterprise. The same is true of the refusal by the employee in *Levold v. Department of Empl. Sec.,* 24 Wn. App. 472, 604 P.2d 175 (1979) to work on weekends and the refusals by the employees in *Willard v. Employment Sec. Dep't,* 10 Wn. App. 437, 517 P.2d 973 (1974) to undertake the tasks assigned them. Falsification of company records, as occurred in *Pacquing v. Department of Empl. Sec.,* 41 Wn. App. 866, 707 P.2d 150 (1985), was expressly determined to have had at least a potential adverse effect on substantial interests of the employer, and so similarly were the refusals to work overtime of the

---

[1]As *Macey* and *Nelson* demonstrate, adverse effect on employer interest is a necessary component of work–related misconduct whether the misconduct occurs on duty (*Macey*) or off duty (*Nelson*). For this reason, and because the absence of adverse effect is determinative in this case, it is unnecessary to determine whether Henson's asserted misconduct occurred on duty or off duty.

claimants in *Durham v. Department of Empl. Sec.*, 31 Wn. App. 675, 644 P.2d 154 (1982).[2]

That adverse effect is an essential element of work–related misconduct is clear as well from the reported decisions of the ESD Commissioner. In *In re Purcell*, Empl. Sec. Comm'r Dec. 540 (1979), for example, a condition of the claimant's employment with an alcoholism treatment center was that he abstain from all alcohol, both on and off the job. For violating this rule by drinking off the job, the claimant was discharged. The Commissioner allowed benefits, holding that claimant's conduct, though in violation of his employer's rule, had no demonstrated "direct adverse reflection on the employer".

More to the point on the issue before us is the Commissioner's decision in *In re Garcia*, Empl. Sec. Comm'r Dec. 422 (1978). Garcia was discharged in part for failing "to attend a treatment program which was a condition imposed on her continued employment by the employer." Upholding a denial of benefits, the Commissioner noted that "requiring treatment was reasonable in view of the circumstances", which included alcohol–related work absences. The Commissioner expressly rejected the claimant's contention that treatment would have been ineffective in preventing further adverse effects on her work performance.

No similar findings were made in this case, and thus I do not believe the element of adverse effect here has been satisfied. ESD found that Henson is an alcoholic, and that his alcoholism adversely affected his job performance insofar as

---

[2]The only exception may be *Franz v. Department of Empl. Sec.*, 43 Wn. App. 753, 719 P.2d 597, *review denied*, 106 Wn.2d 1013 (1986), where the court, incorrectly I believe, asserted that "[n]exus with the work and harm to employer's interest are not issues" in cases of on–duty misconduct. *Franz*, at 759. Even then, however, *Franz* may be consistent with an adverse effect requirement. Franz was discharged for rolling back the date on the postage meter she used in her job as a municipal utility's billing clerk. She did this in order to make it appear that she had sent the bills out on time; actually, they were 2 to 3 days late. This dishonest behavior well could have subjected Franz's employer to legal difficulties if a mandated late–payment penalty were assessed against a customer who had insufficient time to pay his bill.

it caused him to "come to work smelling of liquor", thus impairing his ability to deal effectively with customers. In these circumstances, I agree that Henson would have committed work–related misconduct within the meaning of RCW 50.20.060 if he had violated an agreement or rule requiring him to seek *necessary and effective* treatment for his alcoholism. *See In re Garcia, supra; see also Cherry v. Suburban Mfg. Co.,* 745 S.W.2d 273 (Tenn. 1988).

Henson did not refuse all treatment, however. He completed a 21–day inpatient treatment program and agreed to attend 12 weekly group meetings as part of the treatment center's "aftercare" program. He balked only at the center's additional *recommendation* of "at least 3 AA meetings per week and getting a sponsor."

Would Henson's failure to attend AA meetings prevent his recovery from alcoholism? Maybe. An appreciative AA member, in a recent book on the organization, quotes the program director of the Betty Ford Center as telling center patients: "When you leave here, if you don't go to A.A., you won't make it." N. Robertson, *Getting Better, Inside Alcoholics Anonymous* 210 (1988). Ms. Robertson acknowledges, however, that AA "does not work for everyone", N. Robertson, at 112, and describes the strong religious and spiritual elements of the AA program that many alcoholics have difficulty embracing. Another study observes that AA is best suited to individuals who are "open to spiritual values", and notes that the program is ineffective when it conflicts with an individual's culture or personality, or when alcohol abuse is merely a symptom of underlying psychological problems.[3] Young & Lawson, *A.A. Referrals for Alcohol Related Crimes: The Advantages and Limitations,* 28 Int'l J. Offender Therapy & Comp. Criminology 131 (1984). A legitimate question can be raised as to the efficacy of any treatment program undertaken as a result of coercion rather than from commitment to its ideology.

---

[3]This may well be the case with Henson, who was so resistant to AA that he sacrificed his job of 18 years rather than participate in the program.

There is no question that AA has been a highly successful program for many people. My point, however, is that we don't know if it is the necessary and correct treatment for Thomas Henson. The record is silent as to this critical determination. In these circumstances, therefore, I cannot subscribe to a finding that Henson was discharged for work–related misconduct. "Misconduct may not be presumed, but must be established by a preponderance of the evidence." *In re Purcell, supra* at 2; *see also In re Jellison,* Empl. Sec. Comm'r Dec. 163 (1976). Here, there is no finding and no evidence in the record establishing that Henson's refusal to attend AA meetings would adversely affect his employer. ESD has held only that Henson "violated a code of behavior expected of him by the employer." As explained above, this is not sufficient to sustain a finding of work–related misconduct. *See Torgerson v. Goodwill Indus., Inc.,* 391 N.W.2d 35 (Minn. Ct. App. 1986) (claimant's attendance of AA meetings was expressly found to be necessary to control his alcoholism, thus justifying a denial of benefits when he failed to do so).

The denial of unemployment compensation to a long–standing employee such as Thomas Henson based on the record before us is unfair. I would reverse ESD's decision.

CALLOW, C.J., and BRACHTENBACH and DORE, JJ., concur with DURHAM, J.

Reconsideration denied January 9, 1990.