[No. 35046-7-II.   Division Two.   July 3, 2007.]

HENRY DRAGT ET AL., *Appellants*, v. DRAGT/DETRAY, LLC, ET AL., *Respondents*.

*Kevin A. Bay*, *Robert R. King*, and *Aaron M. Laing* (of *Ryan Swanson & Cleveland, PLLC*), for appellants.

*R. Alan Swanson* (of *Law Offices of R. Alan Swanson, PLLC*); and *Robert G. Casey* and *David J. Corbett* (of *Eisenhower & Carlson, PLLC*), for respondents.

¶1 PENOYAR, J. — Henry and Jane Dragt appeal the trial court's conclusion that they breached their contractual and fiduciary duties as members of a limited liability company between the Dragts and land developer Paul DeTray. The Dragts owned a large parcel of land that they wanted to develop, but they lacked the funds and expertise. In 1996, they formed Dragt/DeTray, LLC (LLC) for the purpose of developing their property. DeTray agreed to front the costs and to provide his expertise to develop the Dragts' land. The operating agreement granted the LLC a future option to purchase the land, but the Dragts insisted they did not want to transfer title of their land to the LLC at that time. Eventually, the Dragts became frustrated with the progress of the development and, in 2004, they consulted an attorney. The attorney advised them that the LLC's option was legally unenforceable. The Dragts proceeded to sell their land to a third party buyer without informing DeTray. This lawsuit ensued.

¶2 The trial court concluded that the option was unenforceable but that the parties had modified the LLC operating agreement and that the Dragts agreed not to sell their land. The court then awarded DeTray damages for breach of contract and breach of fiduciary duty based on the operating agreement. We agree with the trial court that the option was unenforceable but hold that the trial court erred in concluding that the Dragts breached their contractual and fiduciary duties to DeTray. We agree with DeTray, however, that the Dragts were unjustly enriched by his financial contributions to the LLC, and we remand to the trial court to award DeTray restitution in quantum meruit. Affirmed in part, reversed in part, and remanded.

## FACTS

¶3 The Dragts owned and operated a dairy farm on approximately 220 acres of land located in Yelm, Washington. They sold their dairy herd in 1993 and ceased dairy operations. They attempted to sell their land but were unsuccessful and contacted Frank Kirkbride, the principal

in a development management company, for advice. Kirkbride proposed several options and told them that they could sell their land "as is" for $280,000. The Dragts wanted a much higher price for the land, and they asked him to determine the land's suitability for development.

¶4 Kirkbride suggested that the Dragts find a partner with the necessary capital to finance the development. He introduced the Dragts to Paul DeTray, a property developer with experience developing subdivisions for manufactured homes. The Dragts and DeTray reviewed a partnership agreement but decided not to enter into the contract because the arrangement required the Dragts to contribute their land to the partnership. Henry Dragt stated that he did not want to contribute his property or transfer his property title to the partnership. They instead formed a limited liability company so the Dragts would not have to transfer title. Henry Dragt emphasized that he did not want his land to be "tied up" during the land development venture. 1 Report of Proceedings (RP) at 32.

¶5 In 1996, DeTray's accountant drafted a limited liability company agreement (Agreement) for the LLC, and DeTray and the Dragts signed the Agreement. The LLC's purpose was to acquire, develop, construct, manage, own, and sell real property. The parties agreed that the Dragts would contribute their land to the LLC and DeTray would contribute his money and expertise. The Dragts understood that they would continue to own the land, pay the taxes and insurance, and maintain the land. Instead of transferring the land title to the LLC, the Dragts granted the LLC an option to purchase the land. The Agreement stated:

> The Member, Dragt, grants the Company an option to acquire the 220 +/- acres of real estate whose legal description is set forth in attached Schedule 2.

1 Clerk's Papers (CP) at 40-41. The parties understood that the Dragts' land would be held for development by the LLC and that the option was binding and enforceable.

¶6 Each member also contributed $500 to the LLC and acquired an equal 50 percent interest in the LLC. The

Agreement stipulated that each member was required to make "additional Capital Contributions as shall be determined by the Manager from time to time to be reasonably necessary to meet the expenses of the Company. . . ." 1 CP at 41. The Agreement explained that each member would receive 50 percent interest in the LLC and outlined a complex method of compensating each member for contribution or services to the LLC.

¶7 DeTray was the manager of the LLC, and Dragt was a member. The Agreement stated that the LLC's manager had fiduciary responsibilities for the safekeeping and use of all the LLC's funds and assets. It contained no deadline for development completion, and it stated that the LLC's term extended to the year 2046. The Agreement outlined a procedure for notice to members and gave members "first refusal rights" if a member desired to transfer all or a portion of his membership interest in the LLC to a third party. 5 CP at 882; 1 CP at 49. The Agreement stated that it was "the complete and final agreement of the parties relating to the transactions contemplated by this Agreement." 5 CP at 883. It also provided that it may not be amended except by unanimous written agreement of all the members. Finally, the Agreement stated that if any contract provision was invalid, illegal, or unenforceable, the remainder of the Agreement would still be enforceable.

¶8 The LLC was a legally organized limited liability company and was properly incorporated with the Washington Secretary of State. The parties never dissolved the LLC, and neither party argued that the LLC was improperly formed.

¶9 After forming the LLC, the Dragts did not have sufficient funds to continue making mortgage payments on the land. DeTray began making the mortgage payments in 1997 and also executed a personal guarantee on the mortgage. DeTray thought that he was obligated to make the payments under the Agreement's terms and due to the fiduciary duties he owed as the LLC manager. In the first three years of the land development venture, DeTray con-

ducted surveying and topographical studies of the land. In total, he contributed $593,462.62 to the LLC. He paid $124,371.62 for sewer connection; $69,000.00 for consultant reports and designs; $124,000.00 for access to a wastewater treatment facility; and $280,000.00 in mortgage payments.

¶10 Almost 10 years into the land development venture, the Dragts became frustrated with the development progress. In March 2004, Henry Dragt requested a meeting with DeTray. He expressed his frustration and indicated that he wanted DeTray to either "buy him out" or he wanted to "buy out" DeTray from the land development venture. 1 RP at 113. He told DeTray that he would give the LLC operation only three to four more months to progress. After this meeting, DeTray presented an offer to the Dragts; he agreed to assume responsibility of the Dragts' loan, which was approximately $220,000, and give the Dragts $450,000 in cash. The Dragts did not accept this offer.

¶11 Two months later, in May 2004, Henry Dragt received a letter from the Yelm community development director, indicating that because no significant progress had been made on the development project, the city would withdraw the LLC's land use application. Yelm's community development director testified that he wrote the letter because, 'typically, a land use application will not "languish as long as" the LLC's application. 2 RP at 32.

¶12 Throughout the land development venture with DeTray, the Dragts received frequent inquiries from developers seeking to purchase their land. In 2004, Doug Bloom, a developer and member of Tahoma Terra, LLC, approached Dragt and inquired about purchasing the land. The Dragts sought legal advice. They were unsure what their obligations to the LLC were if they sold the land to Bloom. An attorney informed Henry Dragt that if he sold the property outside the LLC arrangement, he would be required to reimburse DeTray only for the financial costs that DeTray accrued during the development venture.

¶13 The Dragts decided to proceed with the sale to Bloom and did not inform DeTray that they intended to sell

the land. The sale to Bloom closed in December 2004, nine months after Henry Dragt's March 2004 meeting with DeTray. Bloom's purchase price included the price of the land, $3,300,000; plus $280,000 to be paid to DeTray for the mortgage payments DeTray made on the land; plus the Dragts' attorney fees to relieve them of their obligations to DeTray and the LLC; and loan satisfaction to the bank, approximately $212,000.

¶14 About a month after closing, Bloom met with DeTray and told him that he had purchased the Dragts' land. He said that he was aware that DeTray had time and effort invested into developing the land and indicated that he wanted to reimburse DeTray for these costs. He told DeTray to think about the offer and to contact him later to discuss. DeTray did not contact Bloom again.

¶15 In September 2004, the Dragts sought a declaratory judgment in superior court, arguing that the option to purchase the land in the Agreement was unenforceable because it did not contain all of the essential terms of a real estate purchase and sale agreement.[1] DeTray asserted that the Dragts breached their fiduciary duties, breached the contract, and were unjustly enriched by DeTray's financial contributions and time invested in the land development venture. DeTray also argued that the parties formed an oral partnership in which they agreed that the Dragts would hold the property for development by the LLC. He asserted that the parties never intended for the Dragts to sell the land outside the LLC arrangement.

¶16 The Dragts filed for summary judgment on two grounds. First, they argued that the LLC's option to purchase the land was unenforceable. The trial court agreed. It granted the Dragts' summary judgment motion and ordered that, as a matter of law, the option was unenforceable. The parties do not appeal this decision.

---

[1] The Dragts also asserted a gross mismanagement claim against DeTray. After the Dragts presented evidence regarding their gross mismanagement claim against DeTray, the court dismissed the claim, stating there was not a "scintilla of evidence of any gross negligence." 2 RP at 131. The Dragts do not appeal the trial court's conclusion here.

¶17 Second, the Dragts argued that there was no oral partnership arrangement between the Dragts and DeTray. DeTray asserted that summary judgment was improper because material issues of fact remained regarding whether an oral partnership agreement existed. The trial court agreed with DeTray and allowed the partnership issue to proceed to trial. It also allowed DeTray's counterclaims of breach of fiduciary duties, breach of contract, and unjust enrichment to proceed to trial.

¶18 The trial court determined that the Dragts and DeTray modified the Agreement "by means of their subsequent oral agreements and [the] course of conduct pertaining to DeTray's ongoing mortgage payments for the Dragts and his personal guarantee for the new loan." 5 CP at 888. It concluded that "[i]n exchange for Paul DeTray's ongoing payments of the Dragts' mortgage, and for his personal guarantee of the [new loan], Henry Dragt undertook to hold the Property for development by DeTray and to recompense DeTray for his capital contributions out of the proceeds from the sale of the Property." 5 CP at 888. The court reasoned that because the Dragts and DeTray were "partners," they owed each other "fiduciary duties of good faith and fair dealing in all respects." 5 CP at 888.

¶19 The trial court concluded that the Dragts breached their contractual obligation of good faith to DeTray by selling the property without notice and by refusing to divide the sale proceeds as called for in the Agreement. It awarded DeTray $2,067,773.88 in damages for the breach of fiduciary duty and breach of contract. The court stated that it was awarding DeTray the amount due to him under the Agreement terms out of the $3,300,000 proceeds from the Dragts' land sale. The Dragts appeal.

## ANALYSIS

¶20 We review findings of fact for substantial evidence, or evidence sufficient to persuade a rational, fair-minded person that the premise is true. *Wenatchee*

*Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). If the standard is satisfied, we will not substitute our judgment for the trial court's even though we may have resolved a factual dispute differently. *Croton Chem. Corp. v. Birkenwald, Inc.*, 50 Wn.2d 684, 686, 314 P.2d 622 (1957). We review questions and conclusions of law de novo. *See Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003) (citing *Veach v. Culp*, 92 Wn.2d 570, 573, 599 P.2d 526 (1979)).

I. MODIFICATION

¶21 The Dragts argue that the trial court erred in enforcing the option against them. They assert that the LLC never had an interest in their land because the option in the Agreement was unenforceable and the LLC possessed an unenforceable option to purchase the land. They contend that the trial court violated the statute of frauds and the rule against perpetuities and created an unreasonable restraint on alienation by enforcing the oral option against the Dragts at trial.

¶22 The Dragts assert that there was no oral modification of the Agreement. They assert that the parties' intent never changed during the term of the LLC and that all parties believed from the inception of the LLC that the Dragts were required to hold the land for the LLC. They assert that there was no alteration of the parties' course of conduct to support a modification, no meeting of the minds to support a modification, and no new consideration to support a modification. The Dragts argue that the Agreement contained an integration clause requiring unanimous written consent for any amendment, therefore barring the modification the trial court crafted.

¶23 DeTray responds that the trial court did not err in finding that the parties modified the Agreement and agreed that the Dragts would hold the land for sale, separate and distinct from the unenforceable option in the Agreement. DeTray asserts that the Agreement was modified; he asserts that the modification occurred when DeTray agreed to

make payments on the Dragts' mortgage and when DeTray executed a personal guarantee of the loan. DeTray asserts that the agreement under the modification was different from the initial understanding between the parties. DeTray asserts that the integration clause is not enforceable and that the clause requiring unanimous written consent was waived by DeTray's conduct when he made the mortgage payments and executed the personal guarantee.

¶24 On summary judgment, the trial court found that the purchase option was unenforceable. This is not appealed, and we must accept that the option was unenforceable as a matter of law. RAP 10.3(g) (the appellate court will only review a claimed error which is included in an assignment of error or which is clearly disclosed in the associated issue pertaining thereto). Therefore, any attempt to enforce the option in the Agreement is contrary to the summary judgment order and is error.

¶25 Modification of a contract by subsequent agreement of the parties arises out of the parties' intention and requires a meeting of the minds. *Wagner v. Wagner*, 95 Wn.2d 94, 103, 621 P.2d 1279 (1980). Mutual assent generally requires a valid offer and acceptance. *Saluteen-Maschersky v. Countrywide Funding Corp.*, 105 Wn. App. 846, 851, 22 P.3d 804 (2001). There must be consideration separate from that of the original contract for a valid contract modification. *Wagner*, 95 Wn.2d at 103.

¶26 Here, the trial court concluded that

[i]n exchange for Paul DeTray's ongoing payments of the Dragts' mortgage, and for his personal guarantee of the Venture Bank Loan, Henry Dragt undertook to hold the Property for development by DeTray and to [recompensate] DeTray for his capital contributions out of the proceeds from the sale of the Property.

5 CP at 888.

¶27 We hold that the trial court erred. There was no changed circumstance or changed understanding of the parties' relationship as set by the Agreement to support the trial court's purported modification.

¶28 DeTray testified that he believed he had a fiduciary obligation to make the mortgage payments on the Dragts' loan under the terms of the *original* Agreement. The Agreement required that each member make "additional Capital Contributions [to the LLC] as shall be determined by the Manager." 1 CP at 41. The Agreement stated that DeTray had "a fiduciary responsibility for the safekeeping and use of all funds and assets of the Company . . . ." 1 CP at 38. There is no evidence that the parties' intentions in regard to the Agreement ever changed. Neither party thought that the Dragts were assuming a new obligation to hold the land for the LLC. The evidence demonstrates that both parties believed that the LLC already had an option to purchase the property. The intent to modify is absent. *Wagner*, 95 Wn.2d at 103.

¶29 Additionally, the required separate consideration for modification is absent. *Wagner*, 95 Wn.2d at 103. There is no evidence of any additional consideration to support a modification. Consideration is any bargained for act or forbearance. *Adams v. Univ. of Wash.*, 106 Wn.2d 312, 327, 722 P.2d 74 (1986). There was no new promise, no exchange given, and no action or forbearance by the Dragts or DeTray in exchange for the modification the trial court created. All promises were made when the parties signed the LLC Agreement and were unchanged throughout the term of the Agreement and the land development venture.

¶30 In 1995, the parties discussed forming a general partnership, but the Dragts rejected it because it required the land to be "tied up." 1 RP at 32. We must honor the agreement between the parties and cannot create a contract for the parties that they did not make for themselves. The parties' understanding that the Dragts would hold their land for the LLC and not sell it never changed throughout the duration of the land development venture until the Dragts consulted an attorney and were told that they could sell the land to Bloom free and clear of any obligation to the LLC.

¶31  A court cannot, based on general considerations of abstract justice, make a contract for parties that they did not make for themselves. *Wagner*, 95 Wn.2d at 104. Under our de novo review, we hold that there is no evidence to support a modification and reverse the trial court's conclusion. The trial court erred in finding a modification of the parties' original Agreement.

II. CONTRACTUAL BREACHES

■ ¶32  The Dragts next argue that they did not breach the Agreement by failing to inform DeTray of the sale to Bloom because the Agreement did not contain a notice provision.

¶33  The trial court concluded that

> [t]he Dragts breached their contractual obligations to DeTray by [(1)] selling the Property to Tahoma Terra without prior notice to DeTray, and [(2)] by refusing to divide the proceeds from the sale as called for in Article 9.7 of the LLC Agreement.

5 CP at 888. Article 12.2 of the parties' contract provides for members' first refusal rights when another member wishes to transfer a portion of his membership interest in the LLC:

> (a) A Unit Holder desiring to transfer all or any portion of its *Membership Interest* or *Economic Interest* to a third party purchaser shall . . . give written notice to the other Unit Holders and the Manager of its intention to so transfer such Interest. Such notice shall set forth the complete terms of the written offer to purchase and the name and address of the proposed third party purchaser.
>
> (b) The other Unit Holders shall . . . have the first right to purchase all (but not less than all) of the Interests proposed to be sold by the selling Unit Holder upon the same terms and conditions stated in the notice given pursuant to Section 12.2(a) [above]. . . .

1 CP at 49. Article 12.2 provides for members' first refusal rights when another member wishes to transfer a portion of their ownership interest in the LLC. Article 12.2 did not apply to the Dragts' sale to Bloom because the Dragts

owned the land and the land never became part of their membership interest or economic interest in the LLC.[2]

¶34 We hold that the Dragts did not breach their contractual obligations under the LLC by selling the land and retaining the proceeds.

III. FIDUCIARY BREACHES

¶35 Next, the Dragts assert that the trial court erred by concluding that they breached their fiduciary duties because they owed no fiduciary duties to the LLC or DeTray. The Dragts argue that the Agreement specifically placed fiduciary duties on DeTray as manager but not on the Dragts because they were only LLC members. Although this is an area of law that is undeveloped in Washington, we hold that the Dragts are correct.

¶36 The LLC was a manager-managed limited liability company, and the parties do not dispute that only DeTray was the designated manager. RCW 25.15.150. The members' duties in a manager-managed limited liability company are different than the manager's duties:

> [A limited liability company] is a creation of statute and not a creation of contract like a general partnership. Therefore, similar to shareholders in a corporation, *members* in [a limited liability company] *do not have inherent fiduciary duties to one another.* As long as members are not acting in a managerial capacity, they do not have fiduciary [duties] to one another unless such fiduciary duties are set forth in the operating agreement.

1 NICHOLAS G. KARAMBELAS, LIMITED LIABILITY COMPANIES: LAW, PRACTICE AND FORMS § 10:3, at 10-3 to -4 (2d ed. 2004) (emphasis added).

¶37 Here, the operating agreement did not set forth any fiduciary duties owed by the LLC members. We have found no Washington cases addressing the fiduciary duties that

---

[2] DeTray argues that the plans and permits on the land belonged to the LLC, but this factor is irrelevant. The Dragts did not sell the plans or permits; they sold the land.

arise as a matter of law for a limited liability company member.

■ ■ ¶38 However, Washington's Limited Liability Company Act, chapter 25.15 RCW, is modeled substantially on the Uniform Limited Liability Company Act (ULLCA), 6A U.L.A. 568 (1996), and we may look to the ULLCA to assist our interpretation. *Koh v. Inno-Pacific Holdings, Ltd.*, 114 Wn. App. 268, 271-72, 54 P.3d 1270 (2002). The ULLCA states that, in a manager-managed limited liability company, only those members serving as managers owe fiduciary duties: "In a manager-managed company . . . *a member who is not also a manager owes no duties to the company or to the other members solely by reason of being a member.*" ULLCA § 409(h)(1), 6A U.L.A. at 601 (emphasis added).

¶39 There is no evidence that the Dragts assumed any managerial duties of the LLC. They were members only and therefore owed no fiduciary duties. We hold that because the Dragts were merely members of the manager-managed LLC, they owed no fiduciary duties and the trial court erred in imposing fiduciary duties on them.

IV. DAMAGES/RESTITUTION

¶40 Finally, the Dragts argue that the trial court erred in calculating damages using article 9.7 of the Agreement. They are correct. The land sale was not subject to the damages provision of article 9.7 because that section applies to the members' share of the LLC's profits. The land sale was not an LLC profit. The Dragts did not breach the Agreement, the Dragts owed no fiduciary duties to the LLC or DeTray, the LLC never had title to the land, and the sale proceeds were not LLC profits. It was error for the trial court to use contractual remedies to compensate DeTray for his costs.

¶41 However, we hold that the Dragts were unjustly enriched by DeTray's financial contributions and services to the LLC during the development venture. The trial

court should have acted in equity and awarded DeTray restitution.

■ ■ ¶42 *Restatement (Third) of Restitution* explains that " '[a] person who is unjustly enriched at the expense of another is liable in restitution to the other.' " RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (Discussion Draft 2000), *quoted in Mazon v. Krafchick*, 158 Wn.2d 440, 458, 144 P.3d 1168 (2006). Quasi contracts, or contracts implied by law, are founded on the equitable principle of unjust enrichment: that one should not be " 'unjustly enriched at the expense of another.' " *Lynch v. Deaconess Med. Ctr.*, 113 Wn.2d 162, 165, 776 P.2d 681 (1989) (quoting *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.*, 49 Wn.2d 363, 367, 301 P.2d 759 (1956)). A person has been unjustly enriched when he has profited or enriched himself at the expense of another contrary to equity. *Farwest Steel Corp. v. Mainline Metal Works, Inc.*, 48 Wn. App. 719, 731-32, 741 P.2d 58 (1987).

¶43 Enrichment alone will not trigger the doctrine; the enrichment must be unjust under the circumstances and as between the two parties to the transaction. *Farwest*, 48 Wn. App. at 732. Three elements must be established for unjust enrichment: (1) there must be a benefit conferred on one party by another, (2) the party receiving the benefit must have an appreciation or knowledge of the benefit, and (3) the receiving party must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value. *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159-60, 810 P.2d 12 (1991).

■ ■ ¶44 Unjust enrichment encompasses the doctrine of quantum meruit. *Bort v. Parker*, 110 Wn. App. 561, 580-81, 42 P.3d 980 (2002). "Quantum meruit" literally means " 'as much as deserved' " and is a remedy for restitution for a reasonable amount of work or services. *Douglas Nw., Inc., v. Bill O'Brien & Sons Constr., Inc.*, 64 Wn. App. 661, 683, 828 P.2d 565 (1992) (quoting *Bignold v. King County*, 65 Wn.2d 817, 826, 399 P.2d 611 (1965)); *Eaton v.*

*Engelcke Mfg., Inc.,* 37 Wn. App. 677, 680, 681 P.2d 1312 (1984). Generally, a party relying on quantum meruit may recover the *reasonable value* of the benefit its services conferred upon the defendant. *Bort,* 110 Wn. App. at 580-81. Unjust enrichment and quantum meruit are related doctrines; the former is a broader concept that encompasses the latter. *Bailie Commc'ns,* 61 Wn. App. at 160.

¶45 All three elements of unjust enrichment are met here. First, the Dragts received a benefit from DeTray because DeTray paid mortgage payments and other land expenses when the Dragts did not have sufficient funds to continue making the payments. Second, the Dragts were aware that DeTray made the payments. Third, they benefited from the payments by continuing to own land of increasing value. DeTray should receive compensation for his financial contributions.

¶46 In total, DeTray paid $280,000.00 in mortgage costs; $124,371.62 for a sewer connection; $69,000.00 for consultant reports and designs; and $124,000.00 for access to a wastewater treatment facility. DeTray should be compensated for all these costs. It would be inequitable for the Dragts to receive the benefit of DeTray's costs, and we remand for an award of unjust enrichment against the Dragts for DeTray's costs, which amount to $593,462.66.

¶47 The court awarded DeTray $2,067,773.88 at trial although DeTray's financial contributions only amounted to $593,462.66 based on the breach of fiduciary duty and breach of contract claims. Because quantum meruit allows restitution only for a reasonable value for services, we remand for findings regarding the reasonable value of the benefit for the services DeTray conferred upon the Dragts.

V. Other Arguments

¶48 The Dragts also assign error to numerous factual findings and argue that the trial court erred in admitting exhibit 221 and inadmissible opinion testimony. Because the analysis above is dispositive of this appeal, we do not analyze these arguments here.

VI. ATTORNEY FEES

¶49 Each party requests attorney fees. The Agreement allowed the prevailing party in any litigation commenced under the LLC to receive attorney fees. A contractual provision for attorney fees at trial supports an award of fees on appeal under RAP 18.1. *W. Coast Stationary Eng'rs Welfare Fund v. City of Kennewick*, 39 Wn. App. 466, 477, 694 P.2d 1101 (1985). The trial court awarded DeTray attorney fees under the Agreement because he was the prevailing party.

¶50 As outlined above, the contractual provisions of the Agreement do not apply to the land sale. DeTray's proper remedy is restitution for unjust enrichment. The trial court erred in relying on the contractual attorney fee provision, and we reverse the award of attorney fees.

¶51 On appeal, a prevailing party is the party who substantially prevailed. *Hertz v. Riebe*, 86 Wn. App. 102, 105, 936 P.2d 24 (1997); RCW 4.84.330. If there is no substantially prevailing party on review, costs are not awarded to either party. RAP 14.2. We decline to award attorney fees to either DeTray or the Dragts on appeal because neither party is a prevailing party.

¶52 Affirmed in part, reversed in part, and remanded.

ARMSTRONG and HUNT, JJ., concur.

Review denied at 163 Wn.2d 1042 (2008).